Henry J. ENDERS, on behalf of himself and all others similarly situated, Plaintiffs-Appellants,

v.

AMERICAN PATENT SEARCH COMPANY et al., Defendants-Appellees.

No. 73–1148.

United States Court of Appeals,
Ninth Circuit.

Feb. 25, 1976.

As Modified on Denial of Rehearing and Rehearing In Banc Denied May 3, 1976.

Norman G. Axe (argued), Beverly Hills, Cal., for plaintiffs-appellants.

Samuel Z. Winnikoff (argued), Beverly Hills, Cal., for defendants-appellees.

## OPINION

Before BARNES and WALLACE, Circuit Judges, and THOMPSON,* District Judge.

WALLACE, Circuit Judge:

Enders, an inventor, brought this class action for restitution, punitive damages and injunctive relief against several patent search companies and individuals allegedly associated with these companies. Enders claims to have been damaged by the defendants' alleged violation of 35 U.S.C. § 33, which provides:

---

* Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

Whoever, not being recognized to practice before the Patent Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent, shall be fined not more than $1,000 for each offense.

He asserts that a private civil remedy in his favor can be implied from the statute. The issue before us is whether the district court had jurisdiction to entertain the claim.

The defendants are Blasius (the alleged ringleader of the enterprises),[1] several companies allegedly acting as "fronts" for Blasius and several employees or associates of Blasius who allegedly participated in these enterprises. These companies advertised in nationwide publications soliciting ideas or inventions from inventors. Enders had dealings with some of these companies. He claimed that after conducting a patent search at the inquiring inventor's expense, these companies would send the inventor a letter indicating that the idea was patentable. The letter would propose that the inventor hire the company to prepare a patent application to be filed by the inventor. The complaint alleged that in this opinion letter and in subsequent communications the companies represented that they were capable, technically qualified and legally authorized to prepare patent applications for filing with the United States Patent Office. Because Blasius and others associated with these companies were not recognized to practice before the Patent Office,

Enders asserted that they were violating section 33.

The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction. The court held further that no private right of action could be implied from section 33. Even if a right could be implied, the court reasoned, Enders failed to meet the $10,000 amount in controversy requirement of 28 U.S.C. § 1331. On the latter ground, we affirm.

I.

The first question is whether the district court erred in basing its dismissal for lack of subject matter jurisdiction on the ground that no civil remedy could be implied from section 33. We hold that it did. Unless the claim is immaterial or frivolous, a federal court must at least consider a suit for recovery under a federal statute. "The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946). *See* Mishkin, *The Federal "Question" in the District Courts,* 53 Colum.L.Rev. 157, 165 (1953). We do not conclude that the claim for relief in this case was frivolous. Thus the district judge was obliged to entertain the case and when he concluded that no civil remedy could be implied from the statute, he should have disposed of it on the

1. Blasius was the subject of a previous criminal prosecution under 35 U.S.C. § 33. His conviction was affirmed on appeal in *United States v. Blasius,* 397 F.2d 203 (2d Cir.), *cert. granted,* 393 U.S. 950, 89 S.Ct. 375, 21 L.Ed.2d 361 (1968), *cert. dismissed,* 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969). In describing the background of the case the court said:

In 1950 Harold Lawrence Blasius, through taking and passing a prescribed examination, became a Registered Patent Agent, recognized to practice before the Patent Office. From then until June 30, 1959 he solicited patent business through advertising in various periodicals and by other means. On July 1, 1959 a new rule of the Patent Office, which prohibited advertising by Registered Patent Attorneys and Patent Agents, became effec-

tive. Blasius, however, persisted in advertising because he was of the opinion that its discontinuance would be fatal to his business. Because of his violations of the rule Blasius' recognition was withdrawn and on February 9, 1961 he was ordered excluded from practice. The exclusion order of the Patent Office provided that he could apply for reinstatement after a year if, during that time, he had ceased all advertising. But he made no effort to take advantage of the proviso and continued to advertise in such nationally circulated magazines as Popular Science, Popular Mechanics and Mechanix Illustrated and to send out letters of solicitation by mail.

*Id.* at 204.

merits by dismissing for failure to state a claim on which relief can be granted rather than for lack of subject matter jurisdiction.

## II.

■ However, even if the dismissal had been for failure to state a proper claim, we would not reach the question whether Enders falls heir to a federal right which could be implied from section 33 because we agree with the district court that Enders must meet the jurisdictional amount in controversy requirement of 28 U.S.C. § 1331(a), which provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

Enders does not contend that his claim meets the jurisdictional amount. His damages could total only a few hundred dollars. Nor can Enders aggregate damages allegedly suffered by members of the purported class. *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 511–512, 38 L.Ed.2d 511, 519 (1973). Thus, unless he can find some jurisdictional statute other than section 1331, he has no alternative but to sue in state court.

In attempting to find a proper jurisdictional basis for his claim, Enders correctly points out that section 1331 is not the sole statute granting federal question jurisdiction in the district courts; a number of other statutes provide jurisdiction in special areas without regard to the amount in controversy. *See* C. Wright, Law of Federal Courts 108 (2d ed. 1970). Enders argues that the district court has jurisdiction of his claim pursuant to one of these statutes, 28 U.S.C. § 1338(a), which provides:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

Essentially, his contention is that this suit arises under section 33, an "Act of Congress relating to patents." Thus, there are two issues before us: (A) does Enders' suit arise under a federal act (*i. e.,* section 33) and (B) is section 33 a statute "relating to patents" as required for section 1338(a) jurisdiction.

### A.

Assuming, without deciding, that Enders has stated a claim for damages implied from section 33, we preliminarily hold that his claim clearly "arises under" federal law. Sections 1338 and 1331 both use the term "arising under," and thus a question has arisen whether the phrase should be construed identically.[2] Some have suggested that inasmuch as section 1338 makes jurisdiction over suits arising under any act relating to patents exclusive of the state courts, the "arising under" language in section 1338 should be construed more strictly than the same language in section 1331. Chisum, *The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation,* 46 Wash.L.Rev. 633, 670–72 (1971); *cf. T. B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir. 1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).

■ While this suggestion may have merit, we do not need to reach the issue. Enders' claim meets even the strictest of standards for "arising under": Mr. Justice Holmes' once popular jurisdictional formula that "[a] suit arises under the law that

---

**2.** There would be nothing novel about construing the same "arising under" phrase differently in different contexts. For example, after much earlier confusion, there is now some indication that the "arising under" language in section 1331 is construed much more restrictively than the identical phrase in Article III. *Powell v.*

*McCormack,* 395 U.S. 486, 515, 89 S.Ct. 1944, 1960–1961, 23 L.Ed.2d 491, 513 (1969) (dictum); *see Romero v. International Terminal Operating Co.,* 358 U.S. 354, 379 & n. 51, 79 S.Ct. 468, 483–484, 3 L.Ed.2d 368, 386 (1959); *see also* Mishkin, *supra,* 53 Colum.L.Rev. at 160–63.

creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987, 989 (1916). Even though this test has been properly criticized as irreconcilable with subsequently decided cases, *see* Wright, *supra,* at 57, the formula is still "useful for inclusion [as opposed to] the exclusion for which it was intended." *T. B. Harms Co. v. Eliscu, supra,* 339 F.2d at 827. While we must reject the Holmes test as one that should be applied in all situations, we do rely on it for its limited application: if a case meets the Holmes test, at least that case "arises under" regardless of what ultimate test is applied.[3] We need go no further in this case. Enders asserts an implied cause of action created by federal law which therefore "arises under" federal law under the Holmes test so as to make federal jurisdiction possible under either section 1331 or section 1338 if the remaining requirements of those statutes are met.[4]

■ The inquiry does not rest here since section 1338 requires the action to arise under an "Act of Congress," unlike the less specific requirement of section 1331 that the suit arise under the "laws . . . of the United States." This difference has caused some to speculate that the language of section 1338 was intended to confine the reach of that section to cases arising under statutory law only. *See Garrett v. TIME–D.C., Inc.,* 502 F.2d 627, 630 (9th Cir. 1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975) (construing similar language in 28 U.S.C. § 1337); *see also Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486, 489–90, 493–94 (2d Cir. 1968). If section 1338 is so confined, a special problem is presented for implied causes of action: does a cause of action implied from a federal statute "arise under" that statute so that section 1338 jurisdiction is possible even if "Act of Congress" is narrowly construed, or does its genesis lie in a more generalized federal common law so that section 1338 jurisdiction is precluded?[5]

■ There has been some academic debate concerning the specific source of implied causes of action. *See* Note, *Implying Civil Remedies From Federal Regulatory Statutes,* 77 Harv.L.Rev. 285, 287–88 (1963). The courts, however, have generally treated an implied cause of action as arising under the statute from which the cause of action is implied. For example, in *Garrett v. TIME–D.C., Inc., supra,* 502 F.2d at 630, we held that an action for a remedy implied from the Interstate Commerce Act arose under that act rather than under federal common law in general; therefore, federal jurisdiction existed under 28 U.S.C. § 1337 (conferring jurisdiction over suits arising under "any Act" regulating commerce). *See also Gomez v. Florida State Employment Service,* 417 F.2d 569, 580–81 (5th Cir. 1969) (alternate holding). Similarly, Enders' alleged cause of action implied from section 33 would arise under that statute, clearly an "Act" within the meaning of section 1338, rather than under federal common law in general.[6]

---

3. By meeting the narrow Holmes test, this claim obviously meets other thoughtful tests which attempt to define when a claim "arises under the . . . laws . . . of the United States." 28 U.S.C. § 1331(a). For example, it would meet the test suggested by Professor Mishkin which requires "a substantial claim founded 'directly' upon federal law." Mishkin, *supra,* 53 Colum.L.Rev. at 165, 168.

4. *See, e. g., Reitmeister v. Reitmeister,* 162 F.2d 691 (2d Cir. 1947). In *Reitmeister,* Judge Learned Hand said that the jurisdiction of the federal courts over a cause of action implied from the Communications Act of 1934 was "too plain for debate." *Id.* at 694.

5. Whether the action is derived from congressional enactment or federal common law is irrelevant for purposes of finding section 1331 jurisdiction over suits arising under the "laws . . . of the United States." *Illinois v. City of Milwaukee,* 406 U.S. 91, 99–100, 92 S.Ct. 1385, 1390–1391, 31 L.Ed.2d 712, 721–722 (1972).

6. Thus we need not decide here whether the phrase "Act of Congress" in section 1338 can be construed as encompassing more than statutes.

## B.

■ Even assuming that Enders' claim arises under an "Act of Congress," however, Enders must meet the additional requirement imposed by section 1338 that the act be one "relating to patents." If Enders does not meet this requirement, section 1338 is not available as a jurisdictional basis for his claim and jurisdiction can be based only upon section 1331 requiring a minimum amount in controversy. Therefore, we now turn to the more difficult question whether section 33 "relat[es] to patents" within the meaning of section 1338. Unfortunately, we find no assistance from the legislative history. We do note that while section 33 is found in the first part of Title 35 entitled "Patents," it is located in Part I headed "Patent Office" rather than in Parts II or III dealing specifically with patents.[7] However, we do not feel content to base our decision on the tenuous ground of in which part of a title a section appears. It is the substance of the matter which must be the talisman—not the accident of enumeration.

It can be argued that a formalistic analysis of section 33 demonstrates that it is "relat[ed] to" patents. The Patent Office was established by Congress for the purpose of processing patent applications pursuant to the patent power granted by the Constitution. *See Sperry v. Florida,* 373 U.S. 379, 403, 83 S.Ct. 1322, 1335, 10 L.Ed.2d 428, 442–443 (1963). The purpose of section 33 is to protect patent applicants against predation by unauthorized practitioners during the patent application process. *Id.* at 390–93, 83 S.Ct. at 1328–1330, 10 L.Ed.2d at 435–437. But this appears to us to be a somewhat tenuous and literalistic connection.[8] From a common sense reading of sections 33 and 1338, it becomes apparent that there is a substantial difference between statutes directly relating to patents and those concerning merely collateral aspects of practice before the Patent Office. We deem this distinction to be critical and to dictate the outcome of this case. While the human mind may be capable of formulating a literal *connection* between a particular statute and patents, the test must be whether there is a relationship strong enough to support a conclusion that it *relates* to patents for purposes of providing jurisdiction under section 1338. Based upon our reading of these two statutes, we conclude that section 33 is not closely enough related to patents to give us section 1338 jurisdiction.

While our decision is primarily based on comparing the statutory language of sections 33 and 1338, our conclusion is fortified by a comparative analysis of the two jurisdictional statutes involved: sections 1338 and 1331. In making this analysis we focus on the two critical differences between the federal jurisdiction provided by sections 1338 and 1331: section 1338 jurisdiction (a) does not require a minimum amount in controversy and (b) is exclusive of the state courts. An analysis of the reasons underlying these differences leads us to conclude that federal jurisdiction of causes of action implied from section 33 should be controlled by section 1331 rather than section 1338.

### a.

Turning to the first distinction between the two sections, we do not find much assistance in an examination of the reasons for requiring a minimum amount in controversy in some types of cases but not in others. Indeed, some commentators have argued that there is no justification at all for requiring a minimum amount in controversy for original federal question jurisdiction. The factors which should be con-

---

7. It is also interesting to note that the 1952 law which enacted section 33 in its present form was entitled "An Act to revise and codify the law *relating to patents and the Patent Office,* and to enact into law title 35 of the United States Code entitled 'Patents.' " Act of July 19, 1952, Pub.L. No. 82–593, 66 Stat. 792 (emphasis added).

8. Enders' strenuous argument to the contrary fails to distinguish between a literal and logical approach to interpretation. *See* H.L.A. Hart, *Positivism and the Separation of Law and Morals,* 71 Harv.L.Rev. 593, 608–15 (1958). *See generally* W. Bishin & C. Stone, Law, Language and Ethics ch. 15, § 1 (1972).

sidered in deciding whether to provide a federal forum for vindication of federal rights are said to be the danger of state court hostility to the federal right, the need and value of a specialized tribunal, the hardship of the remoter federal forum in larger states and possible defects in the state courts which might impair the federal right. These commentators argue that the amount in controversy has little to do with these factors. Because of the existence of many special jurisdictional statutes, they assert that the amount in controversy requirement has little impact on the federal caseload; the existence of these special statutes may indicate that Congress has determined that the states do not provide satisfactory forums for the protection of federal rights even where the amount involved is small. *See, e. g.,* Friedenthal, *New Limitations on Federal Jurisdiction,* 11 Stan.L.Rev. 213, 217 (1959); Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code,* 13 Law & Contemp.Prob. 216, 225–26 (1948); *cf.* American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 172–76 (1969).

These arguments, however, are more properly addressed to Congress than to the courts. These considerations have persuaded some courts to construe 28 U.S.C. § 1337 (conferring federal jurisdiction for suits arising under acts regulating commerce without regard to amount in controversy) very broadly. *E. g., Murphy v. Colonial Federal Savings & Loan Ass'n,* 388 F.2d 609, 614–15 (2d Cir. 1967). But cases construing section 1337 are distinguishable as that statute does not provide for federal jurisdiction exclusive of the state courts; section 1338 does.

b.

Turning to the second distinction between the two statutes, we find greater assistance in examination of the reasoning behind exclusive jurisdiction and that reasoning directs us to the conclusion that jurisdiction should be under section 1331 rather than section 1338. While it is clear that Congress may make federal jurisdiction exclusive, *The Moses Taylor,* 71 U.S. (4 Wall.) 411, 429–30, 18 L.Ed. 397, 401–402 (1867), this authority has been exercised "most sparingly." H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 419 (2d ed. P. Bator et al. 1973). The considerations which seem to have led to exclusive federal jurisdiction under section 1338 do not apply to suits under section 33. Federal jurisdiction over infringement suits was first made exclusive in 1800. Act of April 17, 1800, ch. 25, § 3, 2 Stat. 37; *see* Chisum, *supra,* 46 Wash.L.Rev. at 636. According to one commentator, this was done so as not to allow state courts to annul the acts of high federal officers by holding patents invalid and, since patentees were entitled to treble damages from infringers, so as to avoid disputes about enforcement of federal "penal" laws in state courts. *Id.* at 637. But state court jurisdiction over section 33 suits need not present an opportunity for annulling the act of a high federal official and even if Enders were claiming a right to multiple damages, there is little chance that state courts today would consider the right an unenforceable "penal" law. *See Loucks v. Standard Oil Co.,* 224 N.Y. 99, 102–03, 120 N.E. 198, 198–99 (1918) (Cardozo, J.).[9]

A more important consideration leading to exclusive jurisdiction under section 1338 may have been the special need for uniformity in patent litigation. It was feared that one erroneous application of federal patent law by a state court in an infringement suit resulting in a judgment in favor of the alleged infringer, even if followed by successful suits against other infringers, would allow the first infringer to persist in his illegal conduct and could destroy the value of a patent. This concern is even more significant when viewed in the con-

**9.** Although we realize that the result of *Loucks* might well be different under the modern governmental interest approach to conflicts problems, we refer to it only due to the soundness of its definition of a "penal" law as one which

"awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong." 224 N.Y. at 102, 120 N.E. at 198.

text of the highly technical nature of patent infringement and validity issues and the consequent desirability of judicial patent experience and expertise. *See* Note, *Exclusive Jurisdiction of the Federal Courts in Private Civil Actions,* 70 Harv.L.Rev. 509, 511 (1957).

This same reasoning does not support the need for section 33 claims to be brought under the exclusive jurisdiction umbrella of section 1338. An erroneous determination by a state court is not as likely to undermine federal policy seriously. If a state court were to decide a section 33 case erroneously in favor of an alleged unauthorized practitioner, other applicants would not be barred by collateral estoppel or res judicata from bringing their own section 33 actions; the alleged unauthorized practitioners, unlike an alleged infringer, could not continue an illegal course of conduct on the basis of one erroneous decision in his favor. In addition, section 33 suits will not require federal judicial technical expertise. State judges probably have more familiarity with unauthorized practice of law issues derived from attorney discipline cases and suits for rescission and restitution based on the illegality of legal services contracts. *See* 6A Corbin on Contracts §§ 1510–13, 1540 (1962).

We also do not see how the supposed greater sympathy of federal judges for the interests protected by federal statutes can affect the result in this case. State judges should be every bit as sympathetic to the interests of inventor citizens in not being victimized by unauthorized patent practitioners. In this connection, it is significant that the narrow construction given to the "arising under" language in section 1338 has led to state court consideration of patent validity and infringement issues,[10] apparently without unacceptable impairment of judicial vindication of federal patent policies. We discover no reason to expect state judges to be any less vigilant in section 33 cases.

Our decision has the added benefit that the policy of section 33 could well be effectuated by making available the closer, more familiar, relatively more convenient and therefore less expensive state courts, given the small amounts of the claims likely to be involved. Requiring section 33 suits to be brought exclusively in federal court might actually discourage lawsuits under the act. *See* Hart & Wechsler, *supra,* at 1142.

In conclusion, from a logical reading of the sections involved and in light of the considerations justifying the special provisions of section 1338, we construe that statute narrowly. We hold that 35 U.S.C. § 33 is not an act "relating to patents" and therefore that federal jurisdiction of Enders' claim cannot be founded on section 1338. We thus reject the holdings of those cases finding jurisdiction of civil actions implied from section 33 under section 1338. *E. g., LeBlanc v. Spector,* 378 F.Supp. 301, 308 (D.Conn.1973); *Arnesen v. Raymond Lee Organization, Inc.,* 333 F.Supp. 116, 117 (C.D.Cal.1971).

Since Enders does not claim damages in excess of the minimum amount specified in section 1331 and since the claims of the members of the purported class cannot be aggregated, *Zahn v. International Paper Co., supra,* 414 U.S. at 301, 94 S.Ct. at 511–512, 38 L.Ed.2d at 519, there is no federal jurisdiction. Therefore, the district court did not err in dismissing Enders' suit.

AFFIRMED.

---

**10.** *See* Chisum, *supra,* 46 Wash.L.Rev. at 658–60; *but see Exclusive Jurisdiction of the Federal Courts in Private Civil Actions, supra,* 70 Harv.L.Rev. at 514 & n. 37 (ratio of federal to state court treatment of such issues estimated at 100:1).