**Johanna KIPPERMAN,**
**Plaintiff-Appellant,**

v.

**ACADEMY LIFE INSURANCE COMPA-**
**NY, Defendant-Appellee.**

No. 75–3345.

United States Court of Appeals,
Ninth Circuit.

May 24, 1977.

378

Christine A. Doyle, argued, Kipperman, Shawn, Keker & Brockett, San Francisco, Cal., for plaintiff-appellant.

Stewart R. Dalzell, argued, Drinker, Biddle & Reath, Philadelphia, Pa., Terry J. Houlihan of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant-appellee.

Before TRASK, SNEED and KENNEDY, Circuit Judges.

OPINION

SNEED, Circuit Judge:

Plaintiff-appellant Kipperman, through her father, seeks to establish a private right of action under 39 U.S.C. § 3009. Section 3009 makes the mailing of unsolicited "merchandise" a *per se* unfair trade practice actionable by the Federal Trade Commission. Under section 3009(b), the recipient of unsolicited "merchandise" may treat the item received as a gift. The district court found there was no implied private right of action and dismissed. While we agree that the action should be dismissed, we believe the district court erred in holding that no implied private right of action exists. Thus, we affirm the dismissal of the action on grounds developed hereafter.

## I.

### *Facts.*

Academy Life mailed Kipperman and others unsolicited promotional materials concerning their "Student Protection Policy." These materials included what appears to be a fully executed term insurance policy stating a face value of $2,000. The recipient's name and address were printed by computer on the face of this "policy." At the bottom of this "policy" was a tear-off application form indicating a PREMIUM AMOUNT NOW DUE of $9.00. The application form and an accompanying brochure indicated coverage could be effected only upon return of the completed application and payment of the first premium. Kipperman brought a class action seeking to have the policy declared "merchandise" within the meaning of section 3009, and therefore fully in effect without payment of the premium. Kipperman also sought damages in the form of restitution for those who had sent premiums to Academy Life pursuant to the mailing, and for an injunction forbidding future mailings.

## II.

### *Jurisdiction.*

■ Kipperman sought to obtain jurisdiction under 28 U.S.C. § 1339. This section

waives the amount in controversy requirement for civil actions "arising under any Act of Congress relating to the postal service." We believe jurisdiction will not lie under this section under the reasoning announced in *Enders v. American Patent Search Co.*, 535 F.2d 1085 (9th Cir.), *cert. denied*, 429 U.S. 888, 97 S.Ct. 242, 50 L.Ed.2d 170 (1976). *Enders* concerned 35 U.S.C. § 33, which makes it a punishable offense to falsely hold oneself out to be recognized to practice before the Patent Office. Claiming he had been defrauded because of such representations, Enders brought suit asserting 35 U.S.C. § 33 carried an implied civil damage remedy. Jurisdiction was based on 28 U.S.C. § 1338, which waives the amount in controversy requirement for actions "relating to" patents. The court denied jurisdiction because the claim did not directly relate to patents but concerned "merely collateral aspects of practice before the Patent Office." 535 F.2d at 1090. The court states:

> While the human mind may be capable of formulating a literal *connection* between a particular statute and patents, the test must be whether there is a relationship strong enough to support a conclusion that it *relates* to patents for purposes of providing jurisdiction under section 1338. 535 F.2d at 1090 (emphasis in original).

Section 3009's main purpose is to combat the old and pernicious practice of mailing unsolicited merchandise by enabling the Federal Trade Commission to attack the practice as a *per se* violation of unfair trade laws and by allowing the consumer to keep the item received. We feel this does not relate directly to the operation of the postal system. Our view that section 3009 lacks the required relationship is supported by the legislative history of that section. While passed as part of the Postal Reorganization Act of 1970, 39 U.S.C. § 101 et seq., what is now section 3009 was introduced as an amendment to the Senate version of the Act on the same evening the Act was passed. The purpose of the amendment

was to "control the unconscionable practice of persons who ship unordered merchandise to consumers and then trick or bully them into paying for it." 116 Cong.Rec. at 22314 (June 30, 1970) (remarks of Sen. Magnuson). The Senate amendment was accepted by the conference committee without comment. 1970 U.S. Code Cong. & Ad.News, 3721.

The situation before us contrasts sharply with one in which allegedly there exists an abuse of the franking privilege. *Cf. Hoellen v. Annunzio*, 468 F.2d 522 (7th Cir. 1972), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3001, 37 L.Ed.2d 1006 (1973). Under such circumstances the alleged fraud works directly on the postal service and results in a loss of postal service revenue. Section 1339 jurisdiction clearly exists. No such direct relationship is present here. The claims before us concerned "merely collateral aspects" of the operation of the postal service. True, enforcement of the statute may reduce postal service revenues; but the purpose of enforcement is to protect recipients of unwanted merchandise from being badgered into paying therefor, not to improve, or to impair, the operation of the postal service. Under these circumstances section 1339 jurisdiction is absent.

 We may, nevertheless, make an independent examination of the question of jurisdiction. *Mantin v. Broadcast Music, Inc.*, 244 F.2d 204 (9th Cir. 1957). Because section 3009 *regulates* interstate commerce, we hold that our jurisdiction is derived from 28 U.S.C. § 1337, which waives the amount in controversy requirement for actions under federal statutes that regulate commerce or protect trade and commerce against restraints and monopolies. Our holding is not unique. Section 1337 has been used to provide jurisdiction for actions arising under many federal statutes.[1] *See, e. g., Sosa v. Fite*, 465 F.2d 1227 (5th Cir. 1972) (Federal Consumer Protection Act, 15 U.S.C. § 1601 et seq.); *Kaiser Aluminum & Chemical Corp. v. United States Consumer Product Safety Commission*, 414 F.Supp.

1. The private right to a federal remedy required for section 1337 jurisdiction is discussed *infra*. *See Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973).

1047 (D.C.Del.1976) (Consumer Product Safety Act, 15 U.S.C. § 2051 et seq.).

### III.

#### *Private Right of Action.*

■ Our inquiry into whether section 3009 contains a private right of action begins with the Supreme Court's recent decision in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court states:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law . . . ? 422 U.S. at 78, 95 S.Ct. at 2087–2088.

*See also, Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

Inasmuch as section 3009 is specifically designed to protect the recipients of unordered merchandise, *Cort's* first factor is clearly satisfied. As to the second factor of *Cort, viz.* Congress' intent to establish or deny a private right of action, we believe Congress did not consider the question of a private right of action under section 3009. The explanation may be simple. In the usual situation the remedy provided the recipient is immediate and self-executing. If a book is received, it may be kept by the recipient. There may be occasions, however, when the recipient's rights require vindication at law or where the application of the section, as in the case before us, requires interpretation before the recipi-

ent's rights can be determined. Nonetheless, the automaticity of the remedy provided by Congress in the usual situation goes far to explain why it neither explicitly permitted nor barred private suits under section 3009.

Turning to the third *Cort* factor, we find a *limited* private right of action would be entirely consistent with the purpose of the statute. In order to protect fully the recipient's rights he must be able to bring suit to obtain a judicial declaration of those rights and, when necessary, to secure restitutionary relief. Injunctive relief, however, possibly would interfere with the Federal Trade Commission's power to enforce section 3009. In the absence of an expression on the part of Congress indicating a willingness to incur the risk of this interference, we hold that the private right of action does not embrace an injunction which enjoins the sender's activities. *Cf. Holloway v. Bristol-Myers Corp.*, 158 U.S. App.D.C. 207, 485 F.2d 986 (1973) (holding private enforcement of the Federal Trade Commission Act would seriously interfere with the FTC's enforcement of that act).

■ In addressing the fourth *Cort* factor, Academy Life argues a private right of action should not be implied because this area has traditionally been the subject of state law. It is true that the practice with which section 3009 is concerned traditionally has been governed by state law. However, subjecting it to national law is within the power of Congress and the limited private right we recognize will further the purposes Congress sought to serve by enacting the section.

### IV.

#### *The Merits.*

■ Our conclusions to this point require that we confront the merits of the appellant's case. At its heart is the appellant's contention that the insurance policy forwarded by the appellee is "merchandise" within the meaning of the statute. We reject this contention. It is no more "mer-

chandise" than is an unsolicited offer to sell kitchen appliances. The receipt of such an offer does not permit the recipient under section 3009 to obtain a judicial determination that he is the owner of such appliances without the payment of the purchase price. Even if we assume arguendo that an intangible can constitute "merchandise," the insurance policy forwarded by the appellee is no more than an offer to sell insurance. No insurance coverage could arise until the recipient completed the application and forwarded it with the premium amount. *Ransom v. Penn Mutual Life Insurance Co.*, 43 Cal.2d 420, 274 P.2d 633 (1954). Thus, we hold that such an unaccepted offer to insure is not merchandise in the meaning of 39 U.S.C. § 3009 and therefore does not result in free insurance coverage for the recipients of Academy Life's solicitation.

The dismissal of the appellant's complaint by the district court was a proper disposition of the case although the reason relied upon by the district court for this action was erroneous.

AFFIRMED.