### David WISNIEWSKI Plaintiff

v.

### RODALE, INC., Defendant

No. Civ.A. 03–742.

United States District Court, E.D. Pennsylvania.

Dec. 20, 2005.

---

Errol C. Deans, Jr., Paul A. McGinley, Susan Ellis Wild, Gross McGinley Labarre & Eaton LLP, Allentown, PA, Gregory A. Clarick, Manatt Phelps & Phillips LLP, New York City, for Defendant.

## MEMORANDUM

DIAMOND, District Judge.

Plaintiff and class representative David Wisniewski alleges that magazine and book publisher Rodale, Inc. violated a federal statute and various state laws when it enrolled him and others in its annual book program. Rodale has moved for summary judgment, arguing, in part, that the federal statute provides no private right of action. I agree and dismiss Wisniewski's federal claim. I also dismiss Wisniewski's state law claims for want of jurisdiction.

### BACKGROUND AND PROCEDURAL HISTORY

Then–Plaintiff Michael Karnuth began this litigation on February 25, 2003, alleging that simply because he was a subscriber to Rodale's "Men's Health" magazine, Defendant sent him books he had never ordered—*Sex, a Man's Guide* (in 2000), *Report 2001: A Man's Guide to Women* (in 2001), and *Report 2002: A Man's Guide to Women* (in 2002)—and then demanded payment. (Compl. at ¶¶ 1, 12–17). Karnuth charged that Rodale had violated the Postal Reorganization Act, Pennsylvania's Unsolicited Merchandise Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and unnamed provisions from other states. *See* 39 U.S.C. § 3009 (2004), 73 Pa. Cons.Stat. §§ 2001, 201–02 et seq. This Court had jurisdiction to hear Plaintiff's § 3009 claim pursuant to 28 U.S.C. § 1331 and the state law claims pursuant to 28 U.S.C. § 1367.

Rodale moved to dismiss the Pennsylvania state law claims only; the Honorable Franklin Van Antwerpen denied the Motion. *See* Order of May 16, 2003, at n. 1 (Doc. No. 9) (Van Antwerpen, J.).

Karnuth next moved to certify his Complaint as a class action on behalf of "all persons who, without prior consent, received books and other products from Defendant and an invoice for payment for such books and products," as well as a subclass of "all members of the class who paid, in part or whole, the invoices for such books and products for personal, family, or household purposes." (*Id.* at ¶ 15). Although Karnuth initially alleged that he had not solicited any of the Rodale publications, discovery revealed that this was false: he had ordered and paid for at least one of the books. Judge Van Antwerpen observed that if Karnuth had indeed ordered the Rodale books, "then his claims will be quite distinct than other members of the proposed class, assuming he has any claims at all." *See Karnuth v. Rodale, Inc.,* 2003 U.S. Dist. LEXIS 12095, *10 (E.D.Pa. July 2, 2003). Accordingly, Judge Van Antwerpen denied class certification without prejudice. *See id.* at *8–*10.

The case was reassigned to me on July 16, 2004. Karnuth then filed an Amended Complaint and renewed his Motion for Class Certification. The Amended Complaint included allegations that differed materially from those in Karnuth's Original Complaint. Karnuth now alleged that in September 2000, he completed and returned to Rodale a "One Shot Order Card," allowing him to preview *Sex. A Man's Guide* and enrolling him in Karnuth's annual book preview program. (Amended Compl. at ¶¶ 7–8). If Karnuth did not return the book (at Rodale's expense) within twenty-one days, he would be required to pay for it. Karnuth alleged that he kept *Sex: A Man's Guide* and sent a $39.65 check to Rodale in full payment. Karnuth also alleged that as part of its preview program, Rodale sent him two additional books: *Report 2001: A Man's Guide to Women* (in 2001) and *Report 2002: A Man's Guide to Women* (in 2002).

Karnuth's new allegations directly contradicted his earlier allegation that "[a]t no time either before or after Defendant sent Plaintiff and the class the 2001 and 2002 unsolicited books did Plaintiff request or consent to the mailing or sending to him of the subject books." (Compl. at ¶ 24). In light of that contradiction, I reasoned that, as Judge Van Antwerpen anticipated, Karnuth had unique credibility problems that would prevent him from adequately protecting the interests of the class. *See Karnuth v. Rodale, Inc.,* 2005 WL 747251, *3, 2005 U.S. Dist. LEXIS 5241, *8 (E.D.Pa. Mar. 30, 2005). I therefore denied the Class Certification Motion without preju-

dice and allowed Plaintiff's counsel to substitute a new class representative. *Id.; cf.* N.T. Mar. 7, 2005 at 45:22–25 (Plaintiff's counsel stating that he could easily find another class representative).

On April 13, 2005, Plaintiff's counsel filed a notice substituting David Wisniewski as the new putative class representative. Wisniewski acknowledged that he, too, had returned the "One Shot Order Card" and had thus received *Sex: A Man's Guide.* Wisniewski further alleged that he did not understand that by returning the card, he enrolled in Rodale's annual book preview program. Thus, he alleged that he did not order the books Rodale subsequently sent him—the same *Report 2001* and *Report 2002* volumes received by Karnuth. He nonetheless paid for them to preserve his credit rating. (Notice of Substitution at ¶¶ 2, 4–5); (Amended Notice of Substitution at ¶¶ 4–7). Like Karnuth, Wisniewski sought to represent "all persons who are or have been enrolled in Rodale's Annual Programs and received books from Rodale and invoices for payment of such books, within six years preceding the filing of Plaintiff's Class Action Complaint." (Amended Compl. at ¶ 36). In addition, he sought to certify a subclass of "all members of the class who paid, in part or whole, the invoices for such books for personal, family or household purposes." *Id.*

At the class certification stage, it was apparent that Plaintiff's theories of liability were problematic. *See Karnuth v. Rodale,* 2005 WL 1683605, at *3, 2005 U.S. Dist. LEXIS 14426, at *9–10 (E.D.Pa. July 18, 2005). For instance, Wisniewski admitted in his deposition that he had read very little of the information Rodale sent to him. Naturally, Rodale questioned how Wisniewski could credibly allege that the "One Shot Order Card" misled him if he had not read it. (N.T. of Oct. 24, 2005, at 14:6–14, 24:13–25:23). Wisniewski responded that whether or not he read the card was immaterial. In his view, the Federal Trade Commission's Prenotification Negative Option Rule sets forth an objective disclosure standard—enforceable through 39 U.S.C. § 3009—that Rodale's Order Card did not meet. *Id.* at 16:2–19:25; *see* 16 C.F.R. § 425.1.

As I noted in my previous opinion, I could find no authority linking the FTC Rule and the Postal Reorganization Act. *See Karnuth,* 2005 WL 1683605, at *3, 2005 U.S. Dist. LEXIS 14426, at *9. As I also noted, however, I could not then consider this or any other contention that went to the merits of Wisniewski's Amended Complaint. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–67 (3d Cir.2001) (court may not consider merits when deciding class certification under Rule 23). Accordingly, I granted Wisniewski's Motion for Class Certification on his federal claim. *Karnuth,* 2005 WL 1683605, at *3–4, 2005 U.S. Dist. LEXIS 14426, at *15. Because Plaintiff had failed to analyze the distinctions among the various unnamed state statutes, I denied certification on his state claims.

The parties agree that my ruling on this Motion for Summary Judgment will bind only the named parties. Accordingly, they have not notified potential class members of the Motion. (N.T. of Oct. 24, 2005, at 22:24–23:18). My ruling on this Motion thus has no preclusive effect on other class members; rather, it can serve only as precedent. *Cf.* Fed. R. Civ. Proc. 23(c)(1)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances....").

### STANDARD OF REVIEW

Upon motion of any party, I may grant summary judgment "if there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially show the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In its review of the record, "the court must give the nonmoving party the benefit of all reasonable inferences." *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir.1995), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995). An issue is material only if it could affect the result of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, after viewing all reasonable inferences in favor of the nonmoving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir.1987). The court's function is not to weigh the evidence and determine the facts, but rather to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## DISCUSSION

### I. The Law of the Case Does Not Bar this Decision

■ As a threshold matter, Plaintiff argues that the law of the case doctrine compels me to conclude that § 3009 provides a private right of action. *See* Pl. Mem. in Opp. to Rodale's Mot. for Summ. J. at 2–3. I do not agree.

Rodale initially moved to dismiss Plaintiff's claim under Pennsylvania's Unsolicited Merchandise Act, contending that the UMA does not provide a private right of action. In denying Rodale's Motion, Judge Van Antwerpen cited *Kipperman v.*

*Academy Life Ins. Co.*, in which the Ninth Circuit had found a private right of action under the "analogous federal statute ... 39 U.S.C. § 3009." Order of May 16, 2003, at n. 1 (Doc. No. 9) (Van Antwerpen, J.) (citing 554 F.2d 377, 380 (9th Cir.1977)). Plaintiff argues that in thus holding that Pa.'s UMA provides a private right of action, Judge Van Antwerpen necessarily also held that "there is a private right of action under [§ ]3009...." Pl. Mem. in Opp. to Rodale's Mot. for Summ. J. at 3. To state Plaintiff's contention is to refute it.

The Supreme Court has held that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 397–98 (3d Cir.2003) (quoting *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir.2001)). I do not believe the doctrine applies here.

Rodale did not ask Judge Van Antwerpen to determine whether § 3009 included a private right of action; it moved to dismiss Plaintiff's state law claims only. *See* Answer to Count 1 (Doc. No. 3); Mot. to Dismiss Counts II and III (Doc. No. 4). Thus, Judge Van Antwerpen never "explicitly resolved" the issue. Rather, he explicitly applied Pennsylvania state law in analyzing whether a private right of action exists under the Pennsylvania Unsolicited Merchandise Act, and offered *Kipperman* as advisory authority. *See* Order of May 16, 2003, at n. 1 (Doc. 9) (Van Antwerpen, J.) (analyzing whether a private right of action exists under the three factors dis-

cussed in *Estate of Witthoeft v. Kiskaddon*, 557 Pa. 340, 733 A.2d 623, 626 (1999)).

■ Nor does Judge Van Antwerpen's ruling that the UMA provides a private right of action necessarily imply the existence of a right of action under § 3009. The language and structure of the UMA and § 3009 differ significantly. The UMA is silent with respect to its enforcement mechanism; § 3009 expressly provides for enforcement by the FTC. *Compare* 39 U.S.C. § 3009 *with* 73 Pa. Cons.Stat. § 2001. A different section of the Postal Reorganization Act provides for private enforcement; the UMA has no such similar provision. *See* 39 U.S.C. § 3017; 73 Pa. Cons.Stat. § 2001. In these circumstances, Judge Van Antwerpen's analysis of the UMA *necessarily* had nothing to do with § 3009. Finally, as the Third Circuit has held, the law of the case doctrine "does not restrict a court's power but rather governs its exercise of discretion." *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir.1998). The circumstances presented here strongly militate against applying the doctrine. Accordingly, I will proceed to a discussion of the merits of Rodale's contentions.

## II. Section 3009 Does Not Provide for a Private Right of Action

Rodale contends that because only the FTC may bring an action under § 3009, Wisniewski may not seek to enforce the statute here. If Rodale is correct, then Plaintiff is without any remaining federal cause of action.

Congress must create a private right of action, either expressly or by implication. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Plaintiff has not shown that Congress did either with respect to § 3009.

First, as Plaintiff acknowledges, the statute's actual text does not expressly create a private right of action:

(a) Except for (1) free samples clearly and conspicuously marked as such, and (2) merchandise mailed by a charitable organization soliciting contributions, the mailing of unordered merchandise or of communications prohibited by subsection (c) of this section constitutes an unfair method of competition and an unfair trade practice in violation of section 45(a)(1) of Title 15.

(b) Any merchandise mailed in violation of subsection (a) of this section, or within the exceptions contained therein, may be treated as a gift by the recipient, who shall have the right to retain, use, discard, or dispose of it in any manner he sees fit without any obligation whatsoever to the sender. All such merchandise shall have attached to it a clear and conspicuous statement informing the recipient that he may treat the merchandise as a gift to him and has the right to retain, use, discard, or dispose of it in any manner he sees fit without any obligation whatsoever to the sender.

39 U.S.C. § 3009; *see* Pl. Mem. in Opp. to Rodale's Mot. for Summ. J at 6. Rather, Plaintiff strenuously contends that this statutory language creates an implied private right of action. *See id.* at 3–9; *Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of Pittsburgh*, 382 F.3d 412, 419 (3d Cir.2004). I disagree.

■ The Supreme Court has created a four-factor test to determine "whether a private remedy is implicit in a statute not expressly providing one":

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, ei-

ther to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Fourth,] is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations omitted). The Court subsequently has held that "the burden is on [the proponent of a private right of action] to demonstrate that Congress intended to make a private remedy." *Suter v. Artist M.,* 503 U.S. 347, 363–64, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). The Court has underscored that merely citing to the so-called "rights-creating" language of a statute does not meet this burden. *See Gonzaga University v. Doe,* 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("[E]ven where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy.*'"); *cf. Care Choices HMO v. Engstrom,* 330 F.3d 786, 789 (6th Cir.2003) (granting of Medicare-substitute HMOs certain reimbursement rights "alone [was] not sufficient to imply a private right of action"). As the Third Circuit has noted, "even when Congress creates rights or obligations (including personal rights), it does not necessarily follow that private parties can enforce them or obtain a direct remedy through the judicial process." *Three Rivers,* 382 F.3d at 420. For an implied right of action to exist, "the statute [must] manifest[ ] an intent 'to create not just a private *right* but also a private *remedy.*'" *See Gonzaga,* 536 U.S. at 284, 122 S.Ct. 2268 (quoting *Sandoval,* 532 U.S. at 286, 121 S.Ct. 1511).

■ The Supreme Court has further clarified *Cort v. Ash* by holding that "[s]tatutory intent" is "determinative," and that "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval,* 532 U.S. at 286, 121 S.Ct. 1511. The Third Circuit has explained that under *Sandoval,* "Congress's intent in enacting a statute is always the 'focal point' in determining whether courts should infer a private right of action." *Three Rivers,* 382 F.3d at 421. Accordingly, I need not "trudge through all four of the [*Cort v. Ash* ] factors when the dispositive question of legislative intent has been resolved." *Neer v. Pelino,* 389 F.Supp.2d 648, 653 (E.D.Pa.2005) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 388, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982)).

Plaintiff ignores this wealth of controlling authority and instead misstates the law, arguing that "[t]he Supreme Court has held, without exception, absent a clear Congressional intent to exclude 'judicial interference' with the particular statute, that ... language [such as that in § 3009(b) ]"—specifically, its provision allowing a consumer to "treat" unordered merchandise as a "gift"—"creates a presumption in favor of a private right of action to enforce that right." *See* Pl. Mem. in Opp. to Rodale's Mot. for Summ. J. at 5–6; *see also* N.T. of Oct. 24, 2005, at 13:8–20 (Plaintiff's counsel asserting that "the only way you can show that it's not to be enforced ... is if ... you find specific concrete evidence that Congress didn't intend there to be a remedy...."). As I have already discussed, the law provides exactly the opposite.

Plaintiff also offers two pre-*Sandoval* cases, *Kipperman v. Academy Life Ins.*

*Co.* and *Crosley v. Lens Express, Inc.*, in which courts applied the *Cort v. Ash* factors and found a private right of action under § 3009. *See Kipperman*, 554 F.2d at 377; *Crosley v. Lens Express, Inc.*, No. SA00CA385EP, 2001 WL 650728, at *1, 2001 U.S. Dist. LEXIS 25222, at *2–4 (W.D.Tex. Feb. 12, 2001). Plaintiff's selection of these decisions underscores the merit of Rodale's contentions.

I note first that these decisions are not controlling. *See, e.g., Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 226 (3d Cir.2000) ("[T]he authority from other jurisdictions provides some helpful guidelines, but has no great persuasive effect. . . ."). Moreover, as the *Sandoval* Court "abandoned" the earlier practice of finding private rights of action to "make effective [statutory] purpose," these pre-*Sandoval* cases are unpersuasive. *See Sandoval*, 532 U.S. at 287, 121 S.Ct. 1511 (calling this practice part of an *"ancien regime."*); *see also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n. 3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (noting that the Supreme Court has, in recent years, unambiguously "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one"). Indeed, *Crosley* has been rejected explicitly in the only post-*Sandoval* decision to discuss whether § 3009 implies a private right of action. *Randolph*, 2002 U.S. Dist. LEXIS 26289, at *6–*7. As for *Kipperman*, the Ninth Circuit there acknowledged that it was creating a private remedy in the *absence* of Congressional intent. *Kipperman*, 554 F.2d at 380. Although such a decision arguably was appropriate in 1977, it is clearly not appropriate today.

■ Applying *Sandoval* and the related authority discussed above, I conclude that § 3009 includes no implied private right of action. Section 3009(a) explicitly refers to

that portion of the Federal Trade Commission Act giving enforcement authority to the FTC rather than to consumers. *See* 39 U.S.C. § 3009; 15 U.S.C. § 45(a)(1). Congress is presumed to know both the scope of the enforcement powers it has granted to the FTC and that no private right of action exists under the FTC Act. *Randolph v. Oxmoor House, Inc.*, No. SA01CA0699, 2002 U.S. Dist. LEXIS 26289, at *25 (W.D.Tex. Sept. 30, 2002); *see also Freedman v. Meldy's, Inc.*, 587 F.Supp. 658 (E.D.Pa.1984) (analyzing the repeated holding that the FTC Act includes no private right of action). Moreover, Congress explicitly created a private right of action in another section of the Postal Reorganization Act. *See* 39 U.S.C. § 3017(e)(1)-(2). This strongly suggests that its failure to create this right in § 3009 was intentional. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (conferred private right of action in one statutory provision but silence in another "strongly suggests" that Congress did not intend to create such a right). Finally, the legislative history is silent as to whether Congress intended to create a private right of action. *See Randolph*, 2002 U.S. Dist. LEXIS 26289, at *10–*11 (discussing the legislative history of § 3009).

In these circumstances, the statute's text, structure, and legislative history compel me to conclude that Congress chose not to create a private right of action under § 3009. *See Sandoval*, 532 U.S. at 288, 121 S.Ct. 1511 (noting that the inquiry into legislative intent involves looking to the text and structure of a statute); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise at best."); *Gaj v.*

*U.S. Postal Service*, 800 F.2d 64, 68–69 (3d Cir.1986) (finding no private right of action under Postal Reorganization Act, 39 U.S.C. § 1001(b), because neither language of statute nor legislative history reflected Congressional intent to create private remedy). As the only other court to deal with this question has noted, "if a private individual wishes an injunction against an unfair trade practice as defined in section 3009, the individual must seek recourse with the FTC or pursue any other available federal or state court remedies." *Randolph*, 2002 U.S. Dist. LEXIS 26289, *25–*26 (W.D.Tex.2002).

### III. The Court Lacks Jurisdiction Over Plaintiff's State Law Claims

 In every case, a federal court is required independently to examine its jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) *overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004); *see also, Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The court may thus address jurisdiction *sua sponte* at any stage of proceedings. *See FW/PBS, Inc.*, 493 U.S. at 230, 110 S.Ct. 596; *Sun Buick v. Saab Cars U.S.A.*, 26 F.3d 1259, 1261 (3d Cir.1994); *Eastampton Center, LLC v. Township of Eastampton*, 155 F.Supp.2d 102, 112 (D.N.J.2001). When determining whether to exercise pendent jurisdiction over state law claims, federal courts should consider judicial economy, convenience, fairness to litigants, and comity. *See Hudson United Bank v. Litenda Mortg. Corp.*, 142 F.3d 151, 157 (3d Cir.1998); *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478 (3d Cir.1979).

 Whether or not Wisniewski has even alleged a claim under state law has become a matter of some dispute. The Amended Complaint, filed when Karnuth was the named Plaintiff, purports to bring claims under Pennsylvania statutes "and similar . . . acts in other states." Yet, as I have noted, the Amended Complaint includes specific cites to Pennsylvania law only. (Compl. at ¶¶ 50–59). Wisniewski, a resident of Illinois, adopted the Amended Complaint as his own. Given Wisniewski's residence, Defendant directed its Motion to any claims alleged under Illinois law. Plaintiff has indicated, however, that he apparently will not proceed on his state law claims. (N.T. of Oct. 24, 2005, at 67:22–70:17). In any event, having dismissed Plaintiff's federal claim, I have discretion to dismiss any remaining state law claims for want of jurisdiction. 28 U.S.C. 1367(c)(3); *see also Hudson United*, 142 F.3d at 157; *Fortuna's Cab Service*, 269 F.Supp.2d 562, 566 (D.N.J.2003) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). As it appears Plaintiff has abandoned any remaining state law claims for the purposes of this litigation, there is no prejudice to either party if I dismiss the Amended Complaint in its entirety. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 444 (3d Cir.1997) ("Because all federal claims were correctly dismissed and dismissal of the remaining contract claims would not be unfair to the litigants or result in waste of judicial resources" dismissal of state claims was appropriate). Accordingly, I dismiss the remainder of Plaintiff's Complaint for want of jurisdiction.

An appropriate Order follows.

### *ORDER*

AND NOW, this 20th day of December, 2005, upon consideration of Plaintiff's Motion for Partial Summary Judgment (Doc. No. 79), Defendant's Motion for Summary Judgment (Doc. No. 80), the parties' re-

sponses, and any related submissions, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

2. Defendant's Motion for Summary Judgment is **GRANTED**. Count I of Plaintiff's Complaint is hereby **DISMISSED with prejudice**.

3. Counts II and III of Plaintiff's Complaint are hereby **DISMISSED without prejudice** for want of jurisdiction.

The Clerk of Court shall close this matter for statistical purposes.