

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2007

# Wisniewski v. Rodale Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-1305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Wisniewski v. Rodale Inc" (2007). *2007 Decisions*. Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1305

DAVID WISNIEWSKI,
ON BEHALF OF HIMSELF
AND ALL OTHERS
SIMILARLY SITUATED

v.

RODALE, INC.

David Wisniewski,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 03-cv-00742
District Judge: The Honorable Paul S. Diamond

Argued September 18, 2007

Before: SLOVITER, SMITH, and WEIS, *Circuit Judges*.

(Filed: December 13, 2007)

Daniel B. Allanoff (argued)
Meredith, Cohen, Greenfogel & Skirnich
117 South 17th Street
22nd Floor
Philadelphia, PA 19103

*Counsel for Appellant*

Susan E. Wild
Gross, McGinley, LaBarre & Eaton
33 South 7th Street
P.O. Box 4060
Allentown, PA 18105

Lara M. Krieger
Manatt, Phelps & Phillips
11355 West Olympic Boulevard
Los Angeles, CA 90064

Gregory A. Clarick (argued)
Manatt, Phelps & Phillips
7 Times Square
New York, NY 10036

*Counsel for Appellee*

―――――――――

OPINION OF THE COURT

―――――――――

SMITH, *Circuit Judge*.

This appeal requires us to determine whether § 3009 of the Postal Reorganization Act, 39 U.S.C. § 3009 (2000), which regulates the shipment of unordered merchandise, provides an implied private right of action. The District Court dismissed David Wisniewski's § 3009 claim on the ground that no implied private right of action exists under this statute. Based on our review of the statute and applicable Supreme Court jurisprudence, we will affirm.

I.

This litigation began in February 2003 when then-plaintiff Michael Karnuth sued Rodale, Inc. in the United States District Court for the Eastern District of Pennsylvania, alleging that Rodale violated the Postal Reorganization Act's unordered merchandise statute, 39 U.S.C. § 3009,[1] and various

―――――――――

[1] Section 3009 provides:

> (a) Except for (1) free samples clearly and conspicuously marked as such, and (2) merchandise mailed by a charitable organization

3

soliciting contributions, the mailing of unordered merchandise or of communications prohibited by subsection (c) of this section constitutes an unfair method of competition and an unfair trade practice in violation of section 45(a)(1) of title 15.

(b) Any merchandise mailed in violation of subsection (a) of this section, or within the exceptions contained therein, may be treated as a gift by the recipient, who shall have the right to retain, use, discard, or dispose of it in any manner he sees fit without any obligation whatsoever to the sender. All such merchandise shall have attached to it a clear and conspicuous statement informing the recipient that he may treat the merchandise as a gift to him and has the right to retain, use, discard, or dispose of it in any manner he sees fit without any obligation whatsoever to the sender.

(c) No mailer of any merchandise mailed in violation of subsection (a) of this section, or within the exceptions contained therein, shall mail to any recipient of such merchandise a bill for such merchandise or any dunning communications.

(d) For the purposes of this section, "unordered merchandise" means merchandise mailed without the prior expressed request or consent of the

Pennsylvania state laws. Specifically, Karnuth alleged that Rodale sent him books that he had never ordered and demanded payment for them, and that he paid Rodale for one of the books to avoid damage to his credit rating. Karnuth moved to certify the case as a class action on behalf of all those to whom Rodale had sent unsolicited products and payment demands, with a subclass consisting of those who had paid in whole or in part for the unsolicited products. The court denied the motion without prejudice after Rodale alleged that Karnuth had consented to receive the books. *See Karnuth v. Rodale, Inc.*, No. 03-00742 (E.D. Pa. July 2, 2003). After Karnuth filed an amended complaint, the District Court again denied his motion for class certification in March 2005 on the ground that inconsistencies in Karnuth's two complaints could damage his credibility and thereby harm the other class members. *See Karnuth v. Rodale, Inc.*, No. 03-00742 (E.D. Pa. Mar. 30, 2005).

Subsequently, David Wisniewski replaced Karnuth as class representative. Like Karnuth, Wisniewski alleged that Rodale had sent him unsolicited books and that he had paid Rodale to avoid damage to his credit rating. Rodale argued that Wisniewski consented when he sent Rodale an order card that enrolled Wisniewski in a "negative option" plan, under which Rodale would ship books and bill any recipients who did not

---

recipient.

39 U.S.C. § 3009.

5

return the books within a specified time period. Wisniewski responded that the order cards failed to meet objective disclosure standards and thus were inadequate as a source of consent. Without addressing the merits of these claims, the District Court granted class certification in July 2005 with respect to the § 3009 claim and denied certification with respect to the state law claims. *See Karnuth v. Rodale, Inc.*, No. 03-00742 (E.D. Pa. July 18, 2005). Both parties moved for summary judgment on the federal and state claims, agreeing that any ruling would bind only the named parties and not the class. *See Wisniewski v. Rodale*, 405 F. Supp. 2d 550, 553 (E.D. Pa. 2005). In December 2005, the District Court dismissed the § 3009 claim on the ground that this provision does not confer an implied private right of action, and it dismissed the state law claims for lack of jurisdiction. *Id.* at 557–58. Wisniewski timely appealed.

On appeal, the only issue before us is whether an implied private right of action exists under § 3009.[2] Because this is a question of law, we exercise plenary review over the District Court's summary judgment order. *Am. Trucking v. Del. Toll Bridge Comm'n*, 458 F.3d 291, 295 (3d Cir. 2006).

II.

---

[2] The District Court had jurisdiction over the § 3009 claim under 28 U.S.C. § 1331. We have jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 1294.

A private right of action[3] is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement.[4] Although the legal requirement can be established

[3] Courts have used the terms "private right of action" and "private cause of action" interchangeably. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (using the terms interchangeably in the same paragraph); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76 (1979) (same). Throughout this opinion, we use the term "private right of action" except when quoting an opinion that uses "private cause of action."

[4] One commentator provides a description of a typical implied private right of action scenario:

> [T]he plaintiff institutes a civil action to prevent an injury or to recover damages, and he alleges that he is entitled to relief because of something contained in a legislative text. He says the defendant has acted or proposes to act in a manner contrary to the text. He relies upon the legislation even though the words of the text do not actually state that he has a right to bring an action of this kind, and here the defendant raises a defense. The defendant argues that the legislation does not support the plaintiff's claim because it does not state that the plaintiff is entitled to maintain an action upon it. The court must then decide the issue.

H. Miles Foy III, *Some Reflections on Legislation, Adjudication, and Implied Private Actions in the State and Federal Courts*, 71

by a number of sources, our focus is on statutory duties created by acts of Congress. Many federal statutes provide a private right of action through their express terms.[5] Other federal statutes, however, merely define rights and duties, and are silent about whether an individual may bring suit to enforce them. For some statutes in this latter category, courts have held that "implied" private rights of action exist. Since neither party in the present case contends that the text of § 3009 provides an express private right of action, the only question before us is whether the statute confers an implied private right of action.

No consensus exists regarding when the Supreme Court first began recognizing implied private rights of action under federal statutes. In *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the majority contends that the Court's "earliest"

---

CORNELL L. REV. 501, 503 (1986).

[5] For example, Title II of the Civil Rights Act of 1964 provides a private right of action with the following language:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved . . . .

42 U.S.C. § 2000a-3 (2000).

8

case recognizing an implied private right of action was *Texas & Pacific Railway Co. v. Rigsby*, 241 U.S. 33 (1916). *See Cannon*, 441 U.S. at 689 (citing *Rigsby*, 241 U.S. at 39).[6] In *Rigsby*, the Court unanimously held that the Federal Safety Appliance acts provided an implied private right of action to an injured railroad employee against his employer. 241 U.S. at 39. Others argue that the idea of an implied private right of action existed in English common law[7] and appeared in early U.S. cases such as *Marbury v. Madison*, 5 U.S. 137 (1803).[8]

At all events, over the past fifty years, the Supreme Court has substantially modified its test for determining whether a federal statute provides an implied private right of action. The Court's opinions have not always announced explicitly when they are overruling (or limiting to their facts) old precedents in this area. Therefore, it can be difficult to discern to what degree the Court has repudiated old tests as opposed to applying them

---

[6] Justice Powell's dissent in *Cannon* rejects this contention, arguing that *Rigsby* did not establish a genuine implied private right of action. He describes it as merely "judicial reference to legislatively determined standards of care . . . to establish the existence of negligence." *See Cannon*, 441 U.S. at 732 (Powell, J., dissenting).

[7] *See* Foy, *supra* note 4, at 524–33.

[8] *See Merrill Lynch v. Curran*, 456 U.S. 353, 376 & n.54 (1982); Foy, *supra* note 4, at 534–35.

in a different way to different statutes. We trace these changes below, explaining how the implied private right of action test has developed and where we believe it stands today.

## A. *J.I. Case Co. v. Borak*

We begin our review with *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), because this case exemplifies the Court's older and less restrictive approach to implied private rights of action. In *Borak*, the Court unanimously held that the Securities Exchange Act of 1934 implicitly authorizes a private right of action for rescission or damages to stockholders who alleged that they were injured by a consummated merger authorized with a false or misleading proxy statement in violation of § 14(a) of the Act. *See* 377 U.S. at 428, 435. The Court explained its holding by emphasizing that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Id.* at 433. Based on language in § 14(a) explicitly granting the Securities and Exchange Commission ("SEC") the authority to make rules "in the public interest or for the protection of investors," the Court deemed "the protection of investors" to be among the section's primary purposes. *Id.* at 432. Noting that the SEC admits that it does not have enough time to examine every proxy statement for false and misleading statements, the Court stated that private enforcement is a "necessary supplement" to the SEC's efforts to protect investors. *Id.* at 432–33. Finally, the Court asserted that a federal right of action was necessary because state law might not be adequate to protect the federally-created "rights" in the

statute. *Id.* at 434–35. At no point in its opinion did the *Borak* Court purport to discern Congress's intent regarding a private right of action (as opposed to Congress's general purposes in enacting the statute).

## B. *Cort v. Ash*

The Supreme Court's unanimous opinion in *Cort v. Ash*, 422 U.S. 68 (1975), replaced the relatively loose standards of *Borak* with a four-factor test for determining whether an implied private right of action exists.[9] Using this test, the Court determined that 18 U.S.C. § 610 (1970 & Supp. III), a criminal statute (later repealed) that prohibited corporations from making contributions to presidential campaigns, does not provide an implied private right of action for stockholders to sue corporate directors who violate the statute. 422 U.S. at 68–70. The Court described its test as follows:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff

---

[9] The *Cort* opinion never explicitly acknowledges that it is rejecting the *Borak* approach. In fact, it cites *Borak* several times in a manner suggesting that it is merely distinguishing the statute at issue in *Borak* from the one addressed in *Cort*. *See Cort*, 422 U.S. at 79–80 & n.11, 84, 85. Later cases recognize that *Cort* effectively overruled *Borak*. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).

"one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78 (emphasis in original) (citations omitted). Explaining the second prong of this test, the Court said that when federal law grants certain rights to a class of people (and thereby satisfies the first prong), "it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." *Id.* at 82 (emphasis in original). Thus, the test articulated in *Cort* allowed courts to recognize an implied private right of action even in the absence of any affirmative congressional intent to create this remedy.

### C. Post-*Cort* Developments

Although *Cort* has never been formally overruled, subsequent decisions have altered it virtually beyond

12

recognition.[10] In *Cannon v. University of Chicago*, 441 U.S. 675 (1979), the Court framed the implied private right of action question as one of "statutory construction" in which the Court's task is to determine whether "Congress intended to make a remedy available." 441 U.S. at 688. The *Cannon* Court nonetheless relied on the four *Cort* factors because they were "indicative of such intent."[11] *Id.* Thus, Congress's intent to create a private right of action—virtually ignored in *Borak* and described in *Cort v. Ash* merely as one of four factors—emerged as the primary factor in *Cannon*. The Court in *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979), established that congressional intent is the *exclusive* factor, declaring that the task of courts is "limited *solely* to whether Congress intended to create the private right of action," 442 U.S. at 568 (emphasis

---

[10] Justice Scalia observed in a 1988 concurrence that *Cort*'s analysis was "effectively overruled" by later Supreme Court opinions. *See Thompson v. Thompson*, 484 U.S. 174, 188 (Scalia, J., concurring).

[11] Of the Justices involved in *Cannon*, only Justice Powell called for the outright abandonment of the *Cort* test, claiming that the test is unconstitutional because it permits judicial lawmaking in violation of the separation of powers. See *Cannon*, 441 U.S. at 742–43 (Powell, J., dissenting). Justice Powell declared that courts should refuse to recognize implied private rights of action "absent the most compelling evidence that Congress in fact intended such an action to exist," and that they should be "especially reluctant" to recognize them when the statute provides an alternative mechanism for enforcing the rights it creates. *Id.* at 749 (Powell, J., dissenting).

added), and instructing that courts should use the *Cort* factors only to the extent that they help to determine legislative intent, *id.* at 575–76. *See also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15–16 (1979) ("what must ultimately be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear."). Although the Supreme Court continued to recite the *Cort* factors in later implied private right of action opinions, its attempts to discern legislative intent went well beyond these factors. As the Court's opinion in *Thompson v. Thompson*, 484 U.S. 174 (1988), observed, the Court has used "other tools of statutory construction" in addition to the *Cort* factors as "guides to discerning" Congress's intent. 484 U.S. at 179.

## D. *Alexander v. Sandoval*

The Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001), strongly suggests that the Court has abandoned the *Cort v. Ash* test.[12] In *Sandoval*, the Court held

---

[12] Commentators have noted that *Sandoval* implicitly affirms Justice Powell's dissenting view in *Cannon* that *Cort* should be discarded in favor of a pure focus on congressional intent. *See, e.g.*, Matthew C. Stephenson, *Public Regulation of Private Enforcement: The Case for Expanding the Role of Administrative Agencies*, 91 VA. L. REV. 93, 105 (2005) ("The *Sandoval* Court thus seems to have adopted Justice Powell's view that the multifactor *Cort* analysis 'too easily may be used to deflect inquiry away from the intent of Congress, and to permit a court instead to substitute its own views as to the desirability of private enforcement.'" (quoting *Cannon*, 441 U.S.

that Title VI of the Civil Rights Act does not provide an implied private right of action to enforce disparate-impact regulations promulgated under § 602 of the Act (42 U.S.C. § 2000d-1 (2000)).[13] Although the *Sandoval* Court did not expressly reject the *Cort v. Ash* factors, it did not use them at all to guide its inquiry.[14] Instead, the Court set out the following test for

---

at 740 (Powell, J., dissenting))).

[13] Section 601 of Title VI provides that no person shall be denied, on the basis of race, color, or national origin, the benefits of federally-funded programs. 42 U.S.C. § 2000d (2000). Section 602 authorizes federal agencies "to effectuate the provisions" of § 601 of Title VI through regulations. 42 U.S.C. § 2000d-1 (2000). As the *Sandoval* Court noted, § 601 prohibits only intentional discrimination, but the regulations promulgated under § 602 prohibit not only intentional discrimination but also activities that have a disparate impact on racial groups. 532 U.S. at 280–82. Because no party had challenged the agencies' authority to promulgate disparate-impact regulations, the Court assumed for the purposes of the case that the regulations were valid. *Id.* at 281–82. Also, the Court did not challenge the existence of an implied private right of action to enforce § 601 directly, which it deemed to have been ratified by Congress. *See id.* at 279–80.

[14] The *Sandoval* majority opinion cites *Cort* only to point out that *Cort* marked the demise of the *Borak* approach. *See Sandoval*, 532 U.S. at 287. The *Sandoval* dissent, however, suggests that *Cort* should remain viable. *See Sandoval*, 532 U.S. at 311 (Stevens, J., dissenting).

discerning whether an implied private right of action exists:

> Like substantive federal law itself, private rights
> of action to enforce federal law must be created
> by Congress. . . . The judicial task is to interpret
> the statute Congress has passed to determine
> whether it displays an intent to create not just a
> private right but also a private remedy. . . .
> Statutory intent on this latter point is
> determinative. . . . Without it, a cause of action
> does not exist and courts may not create one, no
> matter how desirable that might be as a policy
> matter, or how compatible with the statute.

532 U.S. at 286–87 (citations omitted). The Court concluded
that the "text and structure" of § 602 did not show that Congress
intended to create a personal right,[15] in light of the absence of
"rights-creating language" that focuses on the protected
individuals. 532 U.S. at 288–89. Next, the Court concluded
that nothing in the text of § 602 demonstrated that Congress
intended to create a private remedy and that the statute's
provision of a remedial scheme suggests that Congress

---

[15] To avoid confusion between the terms "private right" and
"private right of action," we follow the approach of *Three Rivers
Center v. Housing Authority of the City of Pittsburgh* by
referring to substantive rights granted in statutes as "personal
rights" rather than "private rights." *See* 382 F.3d 412, 419 n.9
(3d Cir. 2004). The Supreme Court has used the term "personal
right" in the same manner. *See id.* (citing *Gonzaga Univ. v.
Doe*, 536 U.S. 273, 285 (2002)).

"intended to preclude" any other remedy. *Id.* at 290–91. The Court rejected the Government's argument that Congress had "ratified" an implied private right of action under § 602 by failing to address this issue when it amended Title VI.[16] Having applied what the Court called its "standard test for discerning private causes of action" and having found no congressional intent to create a personal right or private remedy in the statute's text or structure, the Court ended its inquiry. *Id.* at 293.

### E. The State of the Law Today

After *Sandoval*, the relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and

---

[16] Although we have acknowledged that Justice Scalia, the author of the *Sandoval* majority opinion, disapproves of the use of legislative history, *see American Trucking*, 458 F.3d at 298 n.5 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 98–99 (1989) (Scalia, J., concurring)), nothing in *Sandoval* expressly condemns its use. *Sandoval* criticizes consideration of "expectations that the enacting Congress had formed in light of the contemporary legal context," 532 U.S. at 287–88 (quotation omitted), as well as "reliance on congressional inaction" to infer "congressional intent to ratify lower court decisions regarding a particular statutory provision," *id.* at 291–92, but stops short of condemning all judicial inquiry into legislative history. Although the *Sandoval* Court "find[s] that [it] can end" its inquiry into congressional intent with the text and structure of Title VI, *id.* at 288, it does not state that the inquiry in all cases *must* end with text and structure.

17

(2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is "yes" may a court hold that an implied private right of action exists under a federal statute. *See, e.g.*, *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004) ("Put succinctly, for an implied right of action to exist, a statute must manifest Congress's intent to create (1) a personal right, and (2) a private remedy" (citing *Sandoval*, 532 U.S. at 286)). Even when we invoked the *Cort* test in *American Trucking v. Delaware Toll Bridge Commission*, 458 F.3d 291 (3d Cir. 2006), our analysis paralleled the *Sandoval* test. Focusing only on the first two "critical" *Cort* factors, 458 F.3d at 297, the *American Trucking* opinion treated the first *Cort* factor as an inquiry into legislative intent to create a personal right, 458 F.3d at 297, and the second *Cort* factor as an inquiry into legislative intent to create a private remedy, 458 F.3d at 303.[17]

---

[17] We observe that under circumstances different from *American Trucking*, however, reliance on *Cort* could lead to results that are inconsistent with *Sandoval*. As noted above, *Cort v. Ash* said that when a statute contains strong right-creating language, "it is not necessary to show an intention to *create* a private cause of action . . . ." 422 U.S. at 82. *American Trucking* expresses a related idea when it says "[w]here, as here, a statute is devoid of any right-creating language, there need be a more compelling indication in the legislative history before this court can recognize a right of action." 458 F.3d at 303. To the extent that one could interpret this statement to mean that demonstrating legislative intent to create a personal *right* eliminates or reduces the need to demonstrate legislative intent to create a private *remedy*, it is inconsistent with our reading of

III.

Applying the *Sandoval* test to § 3009, we conclude that this statute provides no implied private right of action.

## A. Did Congress Intend to Provide a Personal Right in § 3009?

To determine whether a personal right existed under § 602 of Title VI, the *Sandoval* Court began by reviewing the "text and structure" of the statute to determine whether the statute contained "rights-creating" language that focuses on the "individual protected" rather than "the person regulated." 532 U.S. at 288–89.[18] Accordingly, we examine the text and structure of § 3009 to see if rights-creating language exists. The only part of the statute that explicitly establishes a "right" is § 3009(b):

> Any merchandise mailed in violation of subsection (a) of this section, or within the exceptions contained therein, may be treated as a gift by the recipient, *who shall have the right to*

*Sandoval*.

[18] *Sandoval* appears to have left untouched the Court's jurisprudence on how to determine whether statutory language creates a personal right. *See* 532 U.S. at 288–89 (citing *California v. Sierra Club*, 451 U.S. 287, 294 (1981); *Univs. Research Assn., Inc. v. Coutu*, 450 U.S. 754 (1981); *Cannon*, 441 U.S. at 690).

> *retain, use, discard, or dispose of it in any*
> *manner he sees fit without any obligation*
> *whatsoever* to the sender.

39 U.S.C. § 3009(b) (emphasis added). With an explicit reference to a right and a focus on the individual protected, this language suffices to demonstrate Congress's intent to create a personal right for recipients to treat unsolicited merchandise as a gift. Indeed, Rodale concedes that § 3009(b)'s language is "rights-creating." (*See* Appellee's Br. at 30.)

"Rights-creating" language is not as obviously present in other sections of the statute. Section 3009(b) requires that mailers of unsolicited merchandise attach a "clear and conspicuous statement" informing the recipient of his or her right to treat the merchandise as a gift. Section 3009(c) forbids mailers of unsolicited merchandise from sending a recipient a bill or any dunning communications. These provisions do not necessarily create "personal rights" for recipients to receive clear and conspicuous statements and to be free from bills and dunning communications. Congress worded them as prohibitions on the person regulated rather than entitlements for the person protected.[19] The provisions' failure to identify

---

[19] Even though *Sandoval* suggests that the distinction between a statute focusing on the person regulated and one focusing on the person protected is still significant, *see* 532 U.S. at 289, we would be reluctant to place dispositive weight on this factor. The apparent "focus" of a statute might have more to do with Congress's writing style than its intent. *See* RICHARD H. FALLON, JR. ET AL., HART AND WECHSLER'S THE FEDERAL

"rights" (to receive notices and not to receive bills) contrasts with the explicit identification of a "right" to keep the merchandise as a gift.[20] Even assuming *arguendo* that Congress intended these provisions to create personal rights, the distinction is largely academic because we can find no legislative intent to create a private remedy, for the reasons discussed below.

## B. Did Congress Intend to Provide a Private Remedy for Violations of § 3009?

In the generation since the Supreme Court declared that

COURTS AND THE FEDERAL SYSTEM 785 (5th ed. 2003) ("Does the appropriateness of a private right of action depend on whether a statute says 'no person shall be subjected to discrimination in a federally funded program' rather than 'no federally funded program shall discriminate'?"). In the present case, for example, § 3009(c) might have appeared to "focus" more on the individual protected if Congress had written "No recipient shall be mailed a bill for such merchandise . . . ," but the meaning would be identical. We do not consider Congress's use of the passive voice a reliable guide to its intent to create personal rights.

[20] We also note that the provisions requiring mailers to notify recipients of their rights and to refrain from billing them are ancillary to the recipients' right to keep the merchandise as a gift. These provisions ensure that recipients are aware of this right, but provide no independent benefit to a recipient who is fully aware that he or she has a right to keep the merchandise.

legislative intent to create an implied private right of action is the sole touchstone of our inquiry, the Court has not provided a test for discerning this intent. Most of its decisions have relied on whatever indicators of legislative intent appear to be useful in the context of a given statute. The Court frequently has examined factors related to the text and structure of the statute in question, including the existence of a comprehensive remedial scheme in the statute[21] and the explicit creation of a private right of action elsewhere in the same statute.[22] The Court has also

---

[21] *See, e.g.*, *Sandoval*, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Russell*, 473 U.S. at 146 ("The six carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."); *TAMA*, 444 U.S. at 19–20 ("It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

[22] *See, e.g.*, *Coutu*, 450 U.S. at 773 (highlighting another provision of the same Act explicitly conferring a private right of action); *Touche Ross*, 442 U.S. at 571–72 (pointing out that several other provisions of the same act explicitly provide a private right of action, showing that "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly").

relied upon various aspects of the statute's legislative history,[23] the "customary legal incidents" that follow directly from a statutory provision,[24] Congress's explicit creation of private

---

[23] Among the aspects of legislative history that the Court has considered in the past are statements of intent in the congressional record associated with the original enactment, *see, e.g.*, *Thompson*, 484 U.S. at 184–85; *National Sea Clammers*, 453 U.S. at 17–18; *Coutu*, 450 U.S. at 773–75, and statements of intent in the congressional record associated with later amendments, *see, e.g.*, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 538–40 (1984); *Merrill Lynch*, 456 U.S. at 383–84; *Coutu*, 450 U.S. at 778–79. In certain contexts, the Court has inferred a private right of action from Congress's enactment of a statute containing language similar to that of a statute in which courts had previously found an implied private right of action. *See, e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176–77 (2005); *Cannon*, 441 U.S. at 694–96. In the past, the Court had inferred that Congress intended to ratify a private right of action when it amended a statute while leaving unchanged a provision that federal courts had interpreted to confer a private right of action, *see, e.g.*, *Merrill Lynch*, 456 U.S. at 381–82, but later Court opinions have foreclosed this option, *see Sandoval*, 532 at 291–92; *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 186 (1994). As the *Sandoval* opinion demonstrates, the Court is willing to dispense entirely with an inquiry into legislative history when the text and structure of the statute are clear. *See supra* note 16.

[24] *See TAMA*, 444 U.S. at 18–20 (holding that Congress intended that "customary legal incidents" of contract voidness,

23

rights of action in similar statutes enacted at roughly the same time,[25] and an assortment of other factors.[26] To provide some

including a private right to sue for rescission, an injunction, or restitution, would follow from its statutory declaration that certain contracts "shall be void").

[25] *See, e.g.*, *Cent. Bank of Denver*, 511 U.S. at 184–85 (declining to find an implied private cause of action for aiding and abetting under the Securities Exchange Act of 1934 because Congress had acted against the "backdrop" of a 1929 federal securities law and securities laws in eleven states that had provided explicitly for such a cause of action); *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 92 & n.24 (1981) (declining to find an implied private right of action for contribution under the Equal Pay Act and Title VII and noting that it was "significant" but "not dispositive" that Congress had expressly provided for a right to contribution in certain securities acts); *TAMA*, 444 U.S. at 248 (noting that Congress expressly authorized private suits for damages in other securities-related statutes enacted at around the same time as the IAA).

[26] For example, the Court has examined the extent to which state law remedies are available, *see Daily Income Fund*, 464 U.S. at 542 (noting that the subject matter of the proposed private cause of action is "generally governed" by state law), and even the provision's location in the United States Code, *see Thompson*, 484 U.S. at 183 (stating that the placement of the provision as an addendum to the full faith and credit statute is "strong proof" that Congress did not intend to create a private

boundaries to our inquiry into congressional intent, we will confine ourselves to those purported signals of legislative intent that the parties have raised and that are consistent with current doctrine.

## 1. Text and Structure of § 3009

The express language of § 3009 provides only for Federal Trade Commission ("FTC") enforcement. By declaring the shipment of unsolicited merchandise and the resulting bills to be a violation of 15 U.S.C. § 45(a)(1) (and therefore unlawful), § 3009(a) authorizes the FTC to use any of the Federal Trade Commission Act's ("FTC Act") applicable enforcement mechanisms in response to this behavior.[27] The FTC Act allows the FTC to obtain a variety of remedies[28] for violations of

<hr/>

right of action).

[27] We see no merit in Wisniewski's argument that "[n]owhere does the statute specifically refer to *enforcement* by the FTC . . . ." (Appellant's Br. at 23 (emphasis in original)). For all practical purposes, the reference to "section 45(a)(1)" is a reference to FTC enforcement.

[28] One of the remedies in the current FTC Act is restitution. *See* 15 U.S.C.A. § 45(a)(4)(B) (West 2007) ("All remedies available to the Commission with respect to unfair and deceptive acts or practices shall be available for acts and practices described in this paragraph, including restitution to domestic or foreign victims."). Congress added this remedy to the FTC Act in 2006, however, so it was not part of the FTC's arsenal at the

§ 45(a)(1), including injunctions[29] and civil penalties.[30] The rest of § 3009 builds on § 3009(a) by explaining what rights a recipient possesses when confronted with an unlawful merchandise shipment and by imposing additional duties on shippers of merchandise who have either chosen to disregard § 3009(a) or are subject to one of its exceptions.

The reference to FTC enforcement combined with the absence of other enforcement provisions creates a presumption that FTC enforcement of the statute is exclusive. As the *Sandoval* Court held, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." 532 U.S. at 290. Wisniewski correctly points

---

time § 3009 was enacted. *See* Pub. L. No. 109-455, 120 Stat. 3372 (Dec. 22, 2006).

[29] *See* 15 U.S.C. § 45(a)(2) (2000) ("The Commission is hereby empowered and directed to prevent persons, partnerships, and corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.").

[30] *See* 15 U.S.C. § 45(m)(1)(A) (2000) ("The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this chapter respecting unfair or deceptive acts or practices . . . with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule.").

26

out that "private rights of action have been implied from statutes that provide for agency enforcement" (Appellant's Br. at 23), but this does not change the fact that agency enforcement creates a strong presumption against implied private rights of action that must be overcome.[31]

Wisniewski's strongest argument for overcoming the presumption of exclusive FTC enforcement is based on an analogy between § 3009 and § 215 of the Investment Advisers

---

[31] Since the demise of *Borak*, the Supreme Court has generally been unwilling to find implied private rights of action in statutes that expressly provide for agency or other enforcement. The Court has made exceptions for certain securities and anti-discrimination statutes, but it has done so primarily because of longstanding precedent interpreting the same or similar language to create a private right of action. *See Jackson*, 544 U.S. at 176 (private retaliation actions under Title IX); *Huddleston*, 459 U.S. at 380–81 (private actions based on registration statement fraud under Section 10(b) of Securities Exchange Act); *Merrill Lynch*, 456 U.S. at 378–82 (private actions under Commodities Exchange Act); *Cannon*, 441 U.S. at 694–98 (private actions under Title IX); *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6 (1971) (approving with virtually no analysis a private right of action under Section 10(b)). Moreover, the Court has taken a stricter approach in recent years to both securities and anti-discrimination statutes despite longstanding interpretations. *See Sandoval*, 532 U.S. at 293 (finding no private action under § 602 of Title VI); *Cent. Bank of Denver*, 511 U.S. at 183–88 (finding no private right of action for aiding and abetting under Section 10(b)).

Act ("IAA"), the statutory provision under which the Supreme Court recognized an implied private right of action in *TAMA*. (*See* Appellant's Br. at 16.) Section 215 provides that every contract whose formation or performance would violate the IAA "shall be void . . . as regards the rights of any person" who violated the statute or knew of the facts underlying its violation. 444 U.S. at 16–17 (quoting 54 Stat. 856, as set forth in 15 U.S.C. § 80b-15).[32] The Court concluded that the statutory text showed congressional intent to create a private remedy, stating:

> By declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere. At the very least Congress must have assumed that § 215 could be raised defensively in private litigation to preclude the enforcement of an investment advisers contract. But the legal consequences of voidness are typically not so limited. A person with the power to void a

---

[32] Section 215 declares the contract to be "void," a term typically used in contract law to describe contracts that create no enforceable rights or obligations for either party. *See* RESTATEMENT (SECOND) OF CONTRACTS § 7, cmt. a. Under § 215, the contract is only void "as regards the rights" of a wrongdoer, which suggests that the contract is merely "voidable" at the innocent party's option. In another case, the Supreme Court concluded that "void," as used in § 29(b) of the Securities Exchange Act, really meant "voidable," and noted that § 215 of the IAA is a parallel provision. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 387 (1970).

contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid. . . . For these reasons we conclude that when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution.

444 U.S. at 18–19 (citations omitted). The Court noted in a footnote that Congress might have intended that private litigants raise § 215 claims only in state court, but that "we decline to adopt such an anomalous construction without some indication that Congress in fact wished to remit the litigation of a federal right to the state courts." *Id.* at 19 n.8.

Sections 3009 and 215 do have some similarities. Both provisions define the rights of those affected by a violation of the statute. Section 215 establishes that the wronged party to a purported contract entered in violation of the IAA is under no obligation to perform. Section 3009 establishes that the recipient of merchandise sent in violation of the unordered merchandise statute is under no obligation to return or pay for the merchandise. The *TAMA* Court concluded that, through the statute's explicit declaration of voidness, Congress indicated its intent to allow the wronged party to bring an action under § 215 to rescind the void contract and to obtain restitution for consideration paid. Wisniewski argues that Congress likewise intended to create a private right of action under § 3009 that would allow recipients to obtain restitution for expenses

29

incurred because of the sender's misrepresentations regarding their rights.

Although the *TAMA* analogy is apposite, it is not convincing. We believe that the statutes in question are too different to allow an interpretation that Congress intended to create a private right of action under § 3009. We note that the private right of action allowed in *TAMA* was very limited. It allowed the wronged party to bring an action for "limited equitable relief," 444 U.S. at 22, which includes only those remedies closely associated with the contract's voidness: rescission of the contract, an injunction against the contract's enforcement, or restitution of consideration paid, 444 U.S. at 18–19. The *TAMA* Court explicitly stated that a party could not obtain "compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction." *Id.* at 24 n.14. Also, *TAMA* makes clear that a party has no private right of action to recover amounts lost to an investment adviser who engaged in the fraudulent activities prohibited by § 206, *except* those amounts given as consideration under a void advisory contract. *Id.* at 24–25 & n.14. In other words, *TAMA* does not create a general presumption that Congress intended to create a private right of action for restitution whenever one party obtains a benefit from another by violating the latter party's statutory rights. Instead, its analysis is linked closely to the *explicit* declaration of voidness in the statute and the "customary legal incidents" that follow from such a declaration according to established contract law principles. *See id.* at 19.

In contrast, § 3009 does not explicitly declare any

30

agreement to be void. Although it creates a right for recipients to keep unsolicited merchandise, it says nothing about the consequences if a mailer violates the statute and thereby induces a recipient to disregard this right.[33] As *Sandoval* tells us, creation of a right is not enough to establish congressional intent to create a private right of action to vindicate that right. Wisniewski points to no "customary legal incidents" that follow from a declaration that an individual has the personal right to keep unordered merchandise as a gift. Accordingly, we conclude that the creation of a right to keep merchandise in

---

[33] At most, Wisniewski could contend that his payment to Rodale for the unordered merchandise created a faux-contractual relationship between the two parties, with Rodale's shipment of merchandise as the "offer" and Wisniewski's payment as the "acceptance." Under this reasoning, if Rodale obtained Wisniewski's acceptance in a manner that violated the statute (e.g., by failing to inform him of his rights), then the acceptance would be invalid and the contract voidable. Thus, the declaration that Wisniewski has a right to keep the merchandise would be equivalent to a declaration that any contract that disregarded this right shall be void, which under *TAMA* would entitle Wisniewski to the "customary legal incidents" of a void contract (including restitution). This line of reasoning is too speculative to be convincing, however. It requires us to make an assumption not present in *TAMA*: that statutory recognition of a right automatically carries with it the power to void any purported contracts that arise when a wrongdoer ignores this right. Given the absence of any direct or indirect reference in § 3009 to any contract, we are not willing to make such an assumption.

31

§ 3009, unlike § 215's voidness declaration, is not sufficient to demonstrate congressional intent to create a private right of action.

Rodale points out that Congress expressly provided private rights of action in two other provisions of the Postal Reorganization Act, suggesting that it knew how to create private rights of action when it wished. (Appellee's Br. at 18.) Sections 3017(e)(1) and (e)(2) provide private rights of action to enforce Sections 3001(l) and 3017(d), respectively. Wisniewski counters that Congress enacted § 3017 in 1999 and that this amendment therefore cannot shed any light on the meaning of the original act. (Appellant's Br. at 24–25.) Rodale concedes that these amendments do not necessarily prove Congress's lack of intent to provide a private right of action under § 3009, but claims that they "buttress" the case already made that no such intent exists. (Appellee's Br. at 20.) We need not decide whether to place any weight on these amendments, because they certainly cannot help Wisniewski, and other arguments independently support Rodale's case against an implied private right of action.

In short, the text and structure of § 3009 strongly suggest that Congress did not intend to supplement FTC enforcement with a parallel system of private litigation but "absentmindedly forgot to mention an intended private action." *See TAMA*, 444 U.S. at 20 (quoting *Cannon*, 441 U.S. at 742 (Powell, J., dissenting)).[34]

---

[34] Our holding will not necessarily deprive individuals of a remedy in the event that they are unable to attract the interest of

## 2. Legislative History[35]

Both parties concede that the congressional record is "silent" with regard to the existence of a private right of action in § 3009. (*See* Appellant's Br. at 26–27; Appellee's Br. at 17.) In *Touche Ross*, the Court noted that the legislative history of § 17(a) of the Securities Exchange Act was silent and observed that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." 442 U.S. at 571. But this silence does not "automatically undermine" Wisniewski's claim that an implied private right of action exists, since Congress might express its intent "in the language or structure of the statute, or in the circumstances of its enactment." *See TAMA*, 444 U.S. at 18. As we have already explained, however, the language and structure of the statute provide no support for a private right of action, and Wisniewski

---

FTC enforcers. Individuals who pay for unordered merchandise, either out of ignorance of their right or fear of a negative credit rating, might have recourse to state courts. A footnote in *TAMA* says that it would be "anomalous" to assume that Congress intended "to remit the litigation of a federal right to the state courts." 444 U.S. at 19 n.8. In the present case, however, Congress has authorized litigation by the FTC in federal court. State court may remain a fallback option for individuals who believe that the FTC has not been vigorous enough in enforcing their rights.

[35] Regarding the extent to which legislative history is relevant at all in implied private right of action inquiries, see *supra* note 16.

has not pointed to anything in the circumstances of the statute's enactment or any other factors that express the requisite intent.

### 3. *Kipperman v. Academy Life Insurance Co.*

In their briefs, the parties debate the meaning and relevance of *Kipperman v. Academy Life Ins. Co.*, 554 F.2d 377 (9th Cir. 1977), the only federal appellate opinion that has addressed whether an implied private right of action exists under § 3009. In *Kipperman*, the Ninth Circuit applied the *Cort* test to § 3009 and concluded that the statute provides an implied private right of action for declaratory and restitutionary relief. *See* 554 F.2d at 380.[36] *Kipperman* is not persuasive authority for us because its analysis is inconsistent with the Supreme Court's subsequent decisions in *Cannon*, *Touche Ross*, and *TAMA*, which restructured the implied private right of action test to focus solely on legislative intent. The *Kipperman* opinion appears to weigh the four *Cort* factors roughly equally, providing no evidence that the court recognizes legislative intent as the sole determinative factor. *See* 554 F.2d at 380. Moreover, in its analysis of legislative intent, the *Kipperman* court states that "we believe Congress did not consider the question of a private right of action under section 3009," and it provides no evidence that Congress intended that the statute be

---

[36] The Ninth Circuit did not extend this implied private right of action to injunctive relief because it feared that injunctions would interfere with FTC enforcement of § 3009. *See* 554 F.2d at 380. The court ultimately dismissed the restitution claim on the ground that insurance policies are not "merchandise" within the meaning of § 3009. *See id.* at 380–81.

enforced through a private right of action. 554 F.2d at 380. Lack of evidence of intent probably would have presented no obstacle under *Cort*, which says that congressional intent to create a private right of action is unnecessary as long as Congress conveyed no explicit intent to deny one. *See Cort*, 422 U.S. at 82. But Supreme Court cases decided since *Cort* and *Kipperman* have established that congressional intent to create a private right of action is critical, and the *Kipperman* court's failure to find such intent would dictate a different result in that case today.

IV.

In sum, we see no indication that Congress intended to create a private right of action under § 3009. Accordingly, we will affirm the judgment of the District Court.

Wisniewski v. Rodale, Inc., No. 06-1305

SLOVITER, Circuit Judge, dissenting.

There is a Wonderland quality about the majority's enunciation of the inquiry before us: only if Congress intended to create a personal right and a private remedy, may a court hold that an implied right of action exists under a

35

federal statute.  I do not suggest that the majority misconstrues the recent Supreme Court precedent.  Quite the contrary.  The majority scrupulously reviews the relevant decisions in articulating its version of our task.  The fact that I arrive at a different conclusion should not obscure the inescapable truth that we are both engaged in an illusory errand.  The search is to determine whether Congress, the Congress that enacted the statute, also intended to create a private right of action.  Do we really believe that Congress, with its legislative aides, lawyers, paralegals and assorted staff, is unable to state in simple declarative language that anyone injured by a violation of that statute may file suit in federal court?  Do we really believe that it simply forgot?  But whatever the reason Congress chose to remain silent, the Supreme Court set our course decades ago and we have the responsibility to follow by looking for clues that Congress intended that which it did not say.

Unlike the majority, I conclude that when Congress enacted § 3009(b) expressly creating a personal property right in recipients of unordered merchandise, it also enabled those recipients to take the action necessary to exercise that right, or, in the parlance of the precedents, effect a remedy.

Section 3009(b) states that unordered merchandise "may be treated as a gift by the recipient, who shall have the <u>right</u> to retain, use, discard, or dispose of it in any manner he

sees fit without any obligation whatsoever to the sender." 39 U.S.C. § 3009(b) (emphasis added). As the majority recognizes, "the 'rights-creating' language so critical to the Court's analysis" is unquestionably present here. Alexander v. Sandoval, 532 U.S. 275, 288 (2001) (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13 (1979) (asserting that "the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action")). We shift, then, to Congress' intent to create a remedy, with primary focus on the statute's text and structure.

Congress expressly defined the legal status of unordered merchandise, deeming it "a gift" to the recipient. Recognizing that the senders of unordered merchandise would likely attempt to "trick or bully" recipients into paying for that merchandise, 116 Cong. Rec. 22,314 (1970), Congress confirmed the recipient's right of possession by providing that the receipt of the merchandise was to be free of any obligation to the sender. Therefore, the functional effect of Congress' language was to vest in the recipient unencumbered title to the merchandise. See Ray Andrews Brown, The Law of Personal Property §§ 2.6, 7.12 (3d ed. 1975). The creation of this property right implies that Congress contemplated that a recipient of unordered merchandise would be entitled to the attendant rights of ownership, including the ability to enforce his or her right to title.

The Supreme Court has upheld a limited right of action in analogous circumstances. In <u>Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis</u>, 444 U.S. 11, 12-13 (1979), the Court considered whether a private right of action could be implied from certain provisions of the Investment Advisers Act of 1940 ("IAA"). Section 215 of the IAA provided "that contracts whose formation or performance would violate the Act 'shall be void . . . as regards the rights of' the violator and knowing successors in interest." <u>Id.</u> at 16-17 (quoting 15 U.S.C. § 80b-15). The Court reasoned that "[b]y declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere." <u>Id.</u> at 18. The Court then reasoned that Congress must not only have assumed that beneficiaries of § 215 would be able to raise the statute "defensively in private litigation," but that Congress must also have envisioned that a beneficiary would be able to "resort to a court to have the contract rescinded and to obtain restitution of consideration paid." <u>Id.</u> Therefore, the Court concluded, "when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." <u>Id.</u> at 19.

Just as the voidness of a contract is accompanied by "customary legal incidents," so is the passage of title resulting

38

from delivery of the "gift" created by § 3009(b).[37]  "By putting the donee in possession of the property, physical delivery usually obviates the need for the donee to seek judicial enforcement of the gift."  Restatement (Third) of Property: Wills and Other Donative Transfers § 6.2 cmt. c (2003); see also Farrington v. Tennessee, 95 U.S. 679, 683 (1877) ("A gift consummated is as valid in law as any thing else.").  Of course, judicial enforcement remains available where the recipient requires vindication of his or her right to title.  Indeed, federal courts have long recognized that the possession of a gift gives rise to an enforceable right.  See, e.g., Comm'r of Internal Revenue v. Copley's Estate, 194 F.2d 364, 369 (7th Cir. 1952) (noting that a completed gift "conferred upon the donee an enforceable right"); First Nat'l Bank of Boston v. Comm'r of Internal Revenue, 63 F.2d 685, 691 (1st Cir. 1933) (stating that "delivery and acceptance with intent to make a completed gift passes an enforceable title").

Thus, the language of § 3009(b) implies that beneficiaries of that statute may vindicate their right to possession in a limited cause of action for declaratory relief or, if the owner has been fraudulently induced to pay for the merchandise as is alleged here, restitution.  See Kipperman v.

---

[37] The majority's attempt to analogize to TAMA by applying a contract analysis to § 3009 fails because § 3009 does not create a contract right, but a property right.  Therefore, § 3009 must be analyzed with an eye towards the "customary legal incidents" associated with the property right created thereby.

<u>Acad. Life Ins. Co.</u>, 554 F.2d 377, 380 (9th Cir. 1977) (concluding that a private right of action under § 3009 should be limited to the extent that it does not overlap with the Federal Trade Commission's enforcement authority). Moreover, absent a contrary indication, courts should assume that this statutory right may be litigated in federal court. <u>TAMA</u>, 444 U.S. at 19 n.8.

The structure of § 3009 also supports a private right of action. Section 3009 is comprised of four subsections. Subsection (a) declares that the mailing of unordered merchandise and related communications, as defined in subsection (c), "constitutes an unfair method of competition and an unfair trade practice in violation of section 45(a)(1) of title 15 [the Federal Trade Commission Act ("FTCA")]." Subsection (b) creates the property right at issue in this litigation and requires the senders of unordered merchandise to mark all merchandise with a message notifying the recipients of that right. Subsection (c) prohibits senders of unordered merchandise to "mail to any recipient of such merchandise a bill for such merchandise or any dunning communications." Finally, subsection (d) defines "unordered merchandise." In summary, the statute defines the prohibited activities in subsections (c) and (d), declares that those activities are violative of the FTCA in subsection (a), and then provides a property right for the parties impacted by the prohibited activities in subsection (b).

Although subsection (a) implies that Congress intended the Federal Trade Commission ("FTC") to enforce those proscriptions, there is no suggestion in the statutory language that the beneficiaries of § 3009(b) must rely on that overworked agency for the vindication of their distinct property right.  This analysis is congruent with the reasoning of TAMA.  In that case, the Court distinguished between § 215 of the IAA, where it implied a private right of action, and § 206 of that Act, where it did not.  It explained that "[u]nlike § 215, § 206 simply proscribes certain conduct, and does not in terms create or alter any civil liabilities."  TAMA, 444 U.S. at 19.  Of course, § 3009 does more than just proscribe conduct undertaken by the senders of unordered merchandise; it alters the legal obligations of the relevant parties regarding the ownership of, and liability for, that merchandise.

Moreover, while 15 U.S.C. § 45(b) authorizes the FTC to enjoin parties employing unfair trade practices, that provision does not provide a method for parties harmed by such acts to obtain relief through the FTC.  In fact, although the majority mentions that the FTCA provides for restitution to the victims of unfair trade practices, see 15 U.S.C. § 45(a)(4)(B), that provision was not added to the FTCA until 2006, thirty-six years after § 3009 was enacted, see Pub. L. No. 109-455, 120 Stat. 3372 (Dec. 22, 2006).  Thus, a remedy of restitution, as Wisniewski seeks under the distinct property right created by § 3009(b), has not traditionally been within the scope of the FTC's enforcement power and was not within the FTC's power at the time § 3009 was enacted.

41

Furthermore, parallel enforcement by the FTC and private parties is commonly used to reduce the burden on the FTC. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1174 n.5 (11th Cir. 1985) (noting the existence of private enforcement under the Fair Debt Collection Practices Act for actions that are also enforced by the FTC); FTC v. TRW, Inc., 628 F.2d 207, 209 (D.C. Cir. 1980) (parallel private enforcement under the Federal Credit Reporting Act); Stephanie Kanwit, 1 Fed. Trade Comm'n § 1:7 (2007) (noting that "several statutes enforced by the [FTC], such as the Truth in Lending Act, permit private suits" and that the FTC "is increasingly encouraging private parties to supplement its limited resources and assist in policing the marketplace").

I recognize, as the majority emphasizes, that the Supreme Court has observed that the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290. Distinguished from the proscription in § 3009(a), the property right created in § 3009(b) does not refer to the FTCA, nor did the 1970 version of the FTCA provide an enforcement mechanism for that right. Notably, the Court in TAMA implied a private right of action, albeit limited to rescission or restitution, despite the existence of a separate provision of the IAA permitting the Securities and Exchange Commission "to bring suit in a federal district court to enjoin violations of the [IAA] or the rules promulgated under it." 444 U.S. at 14. The FTC's powers were similarly limited at the time § 3009 was enacted. Therefore, Wisniewski's ability

42

to obtain the limited remedy of restitution is a necessary corollary to the distinct right created by the statute.

It is important to focus on the remedy Wisniewski seeks. He claims that, in violation of the Act, Rodale pressured him to pay for books he contends he did not order. The express language of § 3009(c) provides that no mailer of unordered merchandise "shall mail . . . a bill for such merchandise or any dunning communication." Wisniewski's right to recover the funds exacted from him in violation of that provision would provide "specific and limited relief," 444 U.S. at 18, comparable to the suit for rescission in TAMA.

The Postal Reorganization Act of 1970 ("PRA") effected a major reorganization of the federal postal service. See Postal Reorganization Act, Pub. L. No. 91-375, 84 Stat. 719 (Aug. 12, 1970). Section 3009 was included as part of the newly created Chapter 30 ("Nonmailable Matter"), positioned between the prohibition on pandering advertisements in § 3008 and the regulations governing the mailing of sexually oriented advertisements in § 3010. As none of the other provisions in this chapter of Title 39 created a property right similar to that created by § 3009, the lack of an overarching citizen suit provision is not unexpected.

43

Rodale argued, and the District Court found persuasive, that Congress' explicit creation of a private right of action in "another section of the Postal Reorganization Act . . . strongly suggests that its failure to create this right in § 3009 was intentional." Wisniewski v. Rodale, Inc., 406 F. Supp. 2d 550, 557 (E.D. Pa. 2005) (citing 39 U.S.C. § 3017(e)(1)-(2)). However, § 3017 was not enacted along with § 3009 as part of the PRA. Rather, § 3017 was passed twenty-nine years later, as part of the Deceptive Mail Prevention and Enforcement Act, Pub. L. No. 106-168, 113 Stat. 1806, 1814 (Dec. 12, 1999). By 1999, the Supreme Court's implied private right of action jurisprudence, along with its tendency to reject implied rights of action, was well-established. The fact that Congress took care to include a private right of action in an unrelated section of Title 39 in 1999 has little bearing on Congress' silence when it enacted § 3009 in 1970.

Thus, the text and structure of § 3009 imply that Congress intended to create a private right of action to enforce the property right created in § 3009(b), while the placement of § 3009 in the statutory scheme does not undermine that conclusion. To the extent that legislative history may aid this inquiry into Congressional intent, the parties concede that there is no evidence in that history directly supporting or opposing the existence of a private right of action. Of course, the absence of legislative history is not unexpected in this context and certainly does not defeat the inference created by the text and structure of § 3009. See TAMA, 444 U.S. at 18 ("[T]he legislative history of the Act is entirely silent–a state of affairs not surprising when it is remembered that the Act

44

concededly does not explicitly provide any private remedies whatever."); <u>Cannon</u>, 441 U.S. at 694 ("[T]he legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question.").

Although the final two factors set forth in <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975), whether the right of action is consistent with legislative purpose and appropriate under federal law, are neither necessary nor sufficient to infer the existence of a private right of action, they may still aid a court's analysis of whether Congress intended to create such a right.  <u>See</u> <u>Thompson v. Thompson</u>, 484 U.S. 174, 183 (1988); <u>Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of Pittsburgh</u>, 382 F.3d 412, 421 (3d Cir. 2004).

Therefore, to the extent that the majority's opinion may be read for the proposition that <u>Cort</u> has no further interpretive value following <u>Sandoval</u>, I disagree.  In <u>Sandoval</u>, the Court had no occasion to consult the remaining <u>Cort</u> factors once it had concluded that the text and structure of the relevant regulation did not imply that Congress intended to create a private right of action.  <u>See</u> <u>Sandoval</u>, 532 U.S. at 288 (finding "that we can end . . . [the] search for Congress's intent with the text and structure" of the statute when those sources did not reveal any such intent).  However, where the text and structure are either ambiguous or support

45

the existence of a private right of action, as here, other methods of statutory interpretation, including the <u>Cort</u> factors, may continue to inform a court's analysis. <u>See</u> <u>id.</u> at 312 (Stevens, J., dissenting) (acknowledging that <u>Cort</u> lays out viable rules and strategies to aid a court's private right of action analysis). Thus, <u>Sandoval</u> did not create an exclusive test for analyzing the existence of an implied private right of action any more than <u>Cannon</u> or <u>Thompson</u> created a new test upon recognizing that Congressional intent is fundamental to this inquiry.[38]

As the only other court of appeals to have considered this issue found the latter two <u>Cort</u> factors relevant to its conclusion that § 3009 included a private right of action, I address those factors briefly. Specifically, the Court of Appeals for the Ninth Circuit found that a limited right of action for declaratory relief and restitution, and excluding the ability to seek injunctive relief, "would be entirely consistent with the purpose of the statute." <u>Kipperman</u>, 554 F.2d at 380. That court also concluded that, although "the practice with which section 3009 is concerned traditionally has been governed by state law . . . subjecting it to national law is

---

[38] A cursory review of federal case law reveals that only one other federal court has viewed the Court's decision as creating a distinct "<u>Sandoval</u> test." That court, however, concluded that <u>Sandoval</u> created a four-step test considerably different from the two-step test discussed in the majority's opinion. <u>See</u> <u>Ruta v. Delta Airlines, Inc.</u>, 322 F. Supp. 2d 391, 402 (S.D.N.Y. 2004).

within the power of Congress and the limited private right we recognize will further the purposes Congress sought to serve by enacting the section." Id. Therefore, the final two factors can at least be viewed as providing some support for the inference derived from the text and structure of § 3009 that Congress intended to create both a right and a remedy when it enacted the statute.

For the foregoing reasons, I would reverse the judgment of the District Court and hold that § 3009 includes a limited implied right of action for the restitution that Wisniewski now seeks.